11126 BALTIMORE BOULEVARD, t/a Warwick Books, Plaintiff–Appellee,

v.

PRINCE GEORGE'S COUNTY, MARY-LAND, Defendant–Appellant,

and

Cary W. Greene; Paul F. Malone, Defendants.

No. 88–2823.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1988.

Decided Sept. 28, 1989.

Rehearing and Rehearing In Banc Denied Oct. 25, 1989.

**1416**

Steven M. Gilbert, Associate County Atty. (Michael P. Whalen, County Atty., Michael O. Connaughton, Deputy County Atty., Upper Marlboro, Md., on brief), for appellant.

Howard J. Schulman, Baltimore, Md., for appellee.

Before WIDENER, MURNAGHAN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

The defendant/appellant, Prince George's County, Maryland (hereinafter "County"), appeals from a summary judgment order of the United States District Court for the District of Maryland declaring the County's adult bookstore zoning regulations as applied to the plaintiff/appellee, 11126 Baltimore Boulevard, Inc., t/a Warwick Books (hereinafter "Plaintiff"), unconstitutional. We reverse.

I.

In November 1975, the County Council, sitting as the District Council, approved an adult bookstore zoning ordinance. CB–156–1975. This enactment limited the location of adult bookstores to specified commercial zones, required a "special exception" permit to operate an adult bookstore, prohibited such stores from locating within 1,000 feet of any school building or 500 feet of any church, and required that "existing adult bookstores be modified in order to lessen their impact on the community." CB–156–1975. "Adult Book Store" was defined in the provision as:

> Any commercial establishment that has twenty-five percent (25%) or more of its stock in books, periodicals, photographs, drawings, sculpture, motion pictures, films or other visual representations which depict sadomasochistic abuse, sexual conduct or sexual excitement as defined by Article 27 Section 416A of the Annotated Code of Maryland and does not otherwise qualify as a theatre or nonprofit free lending library.

CB–156–1975, Section 1.

The ordinance amended existing zoning provisions to require such establishments to blacken or otherwise arrange all windows, doors and other apertures so as to prevent the viewing of the interior of the business establishment from without, to limit outdoor displays or advertising to one business sign, and to grant access only to persons above the age of 18 years. These provisions, according to legislative findings in the text of the bill, were added "[i]n order to prevent the impairment of, or detriment to, neighboring properties, including existing or potential land uses in the neighborhood and in order to protect children who may be attracted to such establishments." CB–156–1975, Section 6.

The zoning ordinance was amended twice in 1976. CB–10–1976; CB–104–1976. One amendment increased from 500 feet to 1,000 feet the distance adult bookstores must be placed away from places of worship. CB–10–1976.

In November 1980, the County modified the zoning ordinance to encourage "amortization of nonconforming adult book stores." CB–116–1980. These amendments redefined adult book stores by reducing the amount of non-adult stock from 25 percent to 5 percent and provided for the regulation of any store with one or more mechanical viewing devices. It also provided that nonconforming adult book-stores could continue in operation until July 1, 1985. After that date, an adult bookstore could only continue in operation if it received special exception approval. In order to obtain special exception approval, the applicant must demonstrate that the proposed use meets all of the requirements of the ordinance by substantial evidence and that there is no substantial evidence to the contrary.[1]

1. The Zoning Ordinance of Prince George's County is Subtitle 27 of Prince George's County Code. The adult bookstore provisions at issue in this case were added to the ordinance by County Council Bills 156–1975, 10–1976, 104–1976 and 116–1980. Since the enactment of Council Bill 116–1980, the Zoning Ordinance was repealed and reenacted in recodified form. The current version of the adult bookstore provisions reads as follows:

SECTION 27–107.1(a)(6)

Adult Book Store: Any commercial establishment, which does not otherwise qualify as a theater or nonprofit free-lending library, that either:

(A) Has five percent (5%) or more of its stock on the premises, or has five percent (5%) or more of its stock on display, in books, periodicals, photographs, drawings, sculpture, motion pictures, films, or other visual representations which depict sadomasochistic abuse, sexual conduct, or sexual excitement, as defined by Article 27, Section 416A of the Annotated Code of Maryland; or

(B) Has on the premises one (1) or more mechanical devices for viewing such materials.

SECTION 27–248

(a) In order for a certified nonconforming adult book store to continue, the requirements of this Section shall be met (in addition to any other applicable requirements of this Division).

(b) The purposes of this Section are:

(1) To protect children, who may be attracted to these establishments; and

(2) To prevent or control detrimental effects upon neighboring properties, and existing and proposed land uses in the general area.

(c) All certified nonconforming adult book stores shall meet the following requirements.

(1) All windows, doors, and other apertures shall be blackened or obstructed so as to prevent anyone outside the establishment from viewing its interior;

(2) Advertising shall be limited to one (1) business sign, as provided for in Section 27–615;

(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old.

(d) In order to provide for a reasonable standard of amortization and to prevent an unreasonable loss, all certified nonconforming adult book stores may continue in operation until July 1, 1985, in accordance with the provisions of this Subtitle. On or after that date, an adult book store may only continue in operation if a Special Exception for an adult book store is approved in accordance with Part 4 of this Subtitle.

SECTION 27–317

(a) A Special Exception may be approved if:

(1) The proposed use and site plan are in harmony with the purpose of this Subtitle [27];

(2) The proposed use is in conformance with all the applicable requirements and regulations of this Subtitle [27];

(3) The proposed use will not substantially impair the integrity of any validly approved Master Plan or Functional Master Plan, or, in the absence of a Master Plan or Functional Master Plan, the General Plan;

(4) The proposed use will not adversely affect the health, safety, or welfare of residents or workers in the area; and

(5) The proposed use will not be detrimental to the use or development of adjacent properties or the general neighborhood.

SECTION 27–331

(a) An adult book store may be permitted [by special exception in certain zones], subject to the following:

(1) The subject structure shall be located at least one thousand (1,000) feet from any Residential Zone, land proposed to be used for residential purposes on an approved Basic Plan for a Comprehensive Design Zone, approved Official Plan for an R–P–C Zone, or any approved Conceptual or Detailed Site Plan, or property associated with any of the following: school, library, park, playground, recreational facility, church, convent, or monastery.

(2) As a part of the Special Exception approval, the Council may restrict advertisement, outdoor display, and the location of merchandise, and may impose other reasonable requirements deemed necessary to safeguard the health, safety, morals, and general welfare of the community.

(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old.

Briefly, a special exception application begins with a review for compliance with zoning ordinances by the Technical Staff in the Zoning Division of the Planning Commission which issues a "Technical Staff Report" recommending approval, conditional approval or denial of the application. The application may be passed on to the County Planning Board and then reviewed in a public hearing before a zoning Hearing Examiner. A Hearing Examiner's written decision may be appealed to Prince George's County Council, sitting as the District Council. The Council entertains oral argument and reviews the administrative record before making a final decision. The Council's final decision may be appealed to the Circuit Court for Prince George's County.

The Plaintiff was initially issued a use and occupancy permit in June 1975. Following the enactment of the zoning ordinance in late 1975, the County requested the Plaintiff to apply for certification as a nonconforming use or reduce its stock in adult material to less than 25 percent. The Plaintiff reduced its adult-oriented stock in compliance with the request. After the 1980 ordinance was enacted, the County again instructed the Plaintiff to apply for special exception or seek certification as a nonconforming use. Plaintiff opted to apply for certification as a nonconforming use, and the use of an occupancy permit was extended to the Plaintiff. Pursuant to the 1980 provisions, a store operating under a nonconforming use could remain open until July 1985. CB–116–1980. Plaintiff declined to make application for a special exception. Shortly after the July 1985 deadline passed, the County issued a citation to the Plaintiff for operating without a special exception, and the Board of Zoning Appeals ordered the Plaintiff to cease operation as an adult bookstore.

The Board of Zoning order was appealed to the Circuit Court for Prince George's County by the Plaintiff. In February 1986, the Plaintiff's landlord filed suit to evict the Plaintiff from the premises because the landlord also had received notice of the zoning violation in question. Prince George's County also filed suit against the Plaintiff and the landlord in the District Court of Maryland for Prince George's County to enforce the order of the Board of Zoning Appeals. All three state court proceedings have been stayed by agreement of the parties and the Maryland courts pending a resolution of the present action commenced in the United States District Court on May 5, 1986.

This action brought by the Plaintiff requested the court to declare the county's adult bookstore zoning ordinance to be in violation of the First and Fourteenth Amendments to the United States Constitution and requested an injunction against its application. On summary judgment, the district court held the regulations unconstitutional on their face and the special exception standards and zoning ordinances invalid as applied to adult bookstores. The court concluded that in order to survive a First Amendment challenge, a legislative body's assertion of a "substantial interest" in regulating adult bookstores must be supported by "substantial evidence" in the legislative record, which the court found to be lacking in the case at bar. Thus the court held the County's regulations invalid on their face. The County's special exception standards, the court further held, were invalid under the First Amendment because they "are quite vague" and "subject to possible manipulation and arbitrary application." *11126 Baltimore Boulevard, Inc. v. Prince George's County of Maryland,* 684 F.Supp. 884, 898–99 (D.Md.1988).

Attached to the County's motion for summary judgment were affidavits, legislative records, journal articles, academic studies and expert opinion testimony suggesting that adult bookstores create undesirable secondary effects in their neighborhoods. The district court noted that the zoning provisions were not intended to eliminate adult bookstores but were content-neutral time, place and manner regulations of protected expression. As previously noted, the court held that to withstand a First Amendment challenge an ordinance regulating adult bookstores must be supported by substantial evidence in the legislative record. The district court found that spe-

cific evidence of the secondary effects of adult bookstores, which the Council alleged motivated its regulations, was not before the Council at the time it enacted the challenged legislation. Thus, the County failed to produce a legislative record with substantial evidence justifying, for constitutional purposes, its zoning regulations.

## II.

The Plaintiff's central claim is that the challenged ordinances violate its First Amendment rights. It is uncontested that Plaintiff, in operating its bookstore, is afforded substantial protection by the First and Fourteenth Amendments to the United States Constitution. *See Bantam Books v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). When regulations, such as those challenged here, impinge on a protected business, they must be subjected to the analysis set forth by the Supreme Court in *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1975), and more recently in *City of Renton v. Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

In *American Mini Theatres, supra,* the Court upheld an "Anti–Skid Row Ordinance" which provided, *inter alia,* that an adult theater could not be located within 1,000 feet of any two other "regulated uses," or within 500 feet of a residential area. "Regulated uses" included sexually oriented bookstores and theaters, cabarets, bars, dance halls and hotels restricted to an adult clientele. A plurality opinion authored by Justice Stevens reasoned that the lines drawn by the ordinance were justified by the City's legitimate interest in preventing urban blight and crime. Arguing that ultimately what was at stake was "nothing more than a limitation on the place where adult films may be exhibited," *American Mini Theatres,* 427 U.S. at 71, 96 S.Ct. at 2452, it held that the ordinance did not violate the First and Fourteenth Amendments.

In *Renton, supra,* the Court reviewed a theater owner's challenge to a city zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, single or multiple family dwelling, church, park or school. The district court found that the ordinance did not substantially restrict First Amendment interests. The Court of Appeals for the Ninth Circuit reversed and remanded for a determination as to whether the City had substantial governmental interests to support the ordinance. The Supreme Court reversed the Ninth Circuit, holding that the ordinance was a valid time, place and manner restriction enacted in response to "serious problems" created by sexually oriented picture theaters, rather than a restriction on the content of speech. Drawing extensively from its prior decision in *American Mini Theatres,* the Court said " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton,* 475 U.S. at 47, 106 S.Ct. at 928. Applying these standards, the Court held that the ordinance was content-neutral and, by its terms, was designed to fulfill the City's substantial interest in protecting the community and the quality of its urban life.

### A.

As the trial court correctly observed, the "threshold inquiry in a First Amendment case involving a zoning ordinance is whether the legislation at issue is a content-based restriction, or a content-neutral time, place and manner restriction." *11126 Baltimore Boulevard,* 684 F.Supp. at 890.

*American Mini Theatres* and *Renton* recognize that a community may regulate the effects of sexually oriented businesses without engaging in content-based regulation. More importantly, the Court has found no reason to apply rigorous content-based analysis where a community's "predominant concern" is to control the deleterious "secondary effects" of a particular kind of business rather than to suppress a certain type of speech. *Renton,* 475 U.S. at 49, 106 S.Ct. at 929. Additionally, the Court has noted that sexually explicit forms of expression merit less First Amendment protection than other kinds of

speech. *See American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452 (plurality opinion); *Renton*, 475 U.S. at 49 n. 2, 106 S.Ct. at 929 n. 2.

The *Renton* Court defined "content-neutral" speech regulations as those that "are *justified* without reference to the content of the regulated speech." *Renton*, 475 U.S. at 48, 106 S.Ct. at 929 (emphasis in the original), *quoting Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). Since the Court found the ordinance in *Renton*, by its terms, designed to address the secondary negative effects of "adult motion picture theaters" rather than to suppress the expression of unfavorable or controversial views, the challenged zoning ordinance was held to be a valid "content-neutral" regulation.

■ Pursuant to these criteria, we affirm the finding of the district court that the "ordinance in this case is a content-neutral time, place and manner regulation." *11126 Baltimore Boulevard*, 684 F.Supp. at 891. The County ordinances at issue are content-neutral because, as the challenged legislations' preambles and various sections declare,[2] they are designed to combat urban blight and protect minors—valid interests unrelated to the suppression of particular speech. The district court reported that the "record does not suggest any intent by members of the Council or others to do more than restrict the areas in the County in which adult bookstores could locate." *11126 Baltimore Boulevard*, 684 F.Supp. at 891. As Justice Powell observed in *American Mini Theatres*, "[i]f [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location." *American Mini Theatres*, 427 U.S. at 82 n. 4, 96

S.Ct. at 2456–2457 n. 4 (Powell, J., concurring).

**B.**

The challenged regulations are properly reviewed under the time, place and manner analysis because they do not regulate speech-related activities on the basis of content, but instead restrict primarily noncommunicative aspects of Plaintiff's right to own and operate a bookstore. Describing the regulations as time, place and manner regulations, of course, does not end our inquiry.

Regardless of the ordinances' focus on the secondary effects of sexually oriented businesses, there is little question that the regulations have an incidental impact on speech-related activities that are, in some measure, protected by the First Amendment. Because of this impact, we believe it appropriate to analyze the ordinances under the four-part test of *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). *See also American Mini Theatres*, 427 U.S. at 79–80, 96 S.Ct. at 2456–57 (Powell, J., concurring); *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1169 (4th Cir.1986); *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 826 (4th Cir.1979), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980). Under the *O'Brien* test, a governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, "[1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on ... First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. In *Renton*, the Court similarly stated that the "appropriate in-

---

2. Council Bill 156–1975, Section 6, outlines the following purposes for the Zoning Ordinance:

In order to prevent the impairment of, or detriment to, neighboring properties, including existing or potential land uses in the neighborhood, and in order to protect chil-

dren who may be attracted to such establishments, the continuation of a legal, nonconforming adult book store shall only be permitted if the following requirements are met: ... *See also* CB–116–1980, Section 1.

quiry" in time, place and manner cases is "whether the ... ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. at 930. *See also Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984); *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981).

■ We believe the challenged ordinances satisfy the *O'Brien* test. Analysis starts with a recognition of the broad power of municipalities to implement land use controls to meet the increasing encroachment of urbanization on the quality of life. *See generally Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The ordinances in this case, like the regulation in *American Mini Theatres*, is "certainly within the concept of the public welfare that defines the limits of the police power." *American Mini Theatres*, 427 U.S. at 75, 96 S.Ct. at 2454 (Powell, J., concurring). Such restrictions on the use of real property rests upon and are justified as a proper exercise of the police power to advance the public health, safety and welfare. *See Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954). Because zoning ordinances are legislative acts they enjoy a strong presumption of constitutionality, and if there is a reasonable relation between the end sought to be achieved and the means employed to achieve that end, the regulation will usually be upheld. We find, as did the district court, that the zoning regulations at issue in this case reflect a legitimate exercise of police power under which the state may limit the use of private property for the public welfare. *11126 Baltimore Boulevard*, 684 F.Supp. at 893.

■ The next question is whether the regulations further an important or substantial governmental interest. We conclude that they do. The ordinances on their face advance two governmental interests: first, to protect minors from exposure to sexually explicit materials and, second, to prevent the adverse effects of sexually oriented businesses on neighboring property values and land uses.[3]

As a majority of the Supreme Court recognized in *American Mini Theatres*, a community's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect." *American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. at 2452 (plurality opinion); *see id.* at 80, 96 S.Ct. at 2457 (Powell, J., concurring) ("Nor is there doubt that the interests furthered by this ordinance are both important and substantial."). *See also Renton*, 475 U.S. at 50, 106 S.Ct. at 930; *Wall Distributors*, 782 F.2d at 1169 ("City advances government interests of reducing crime and maintaining public health and decency standards"); *Hart Book Stores*, 612 F.2d at 828 (state "has a substantial interest in maintaining a stable, healthful environment in its cities"); *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298, 1303 (5th Cir.1988) (City has substantial interest in maintaining quality of urban life). There can also be no question that governments have a legitimate interest in shielding minors from sexually explicit materials which are not considered obscene as to adults. *See Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 1280–81, 20 L.Ed.2d 195 (1968) (state's "interest in the well-being of its youth" justifies some limitation on First Amendment).

We find that the County's stated interests are substantial. We must also review, however, whether the ordinances had sufficient legislative basis, or whether the County Council when enacting the regulations had "evidence [which it] reasonably believed to be relevant to the problem[s]" of preserving the neighborhood and protect-

3. See footnote 2 above.

ing children. *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 930–31. The district court found the ordinances unconstitutional since there was insufficient evidence in the record to substantiate the finding that the regulated "speech" produces negative secondary effects. *11126 Baltimore Boulevard*, 684 F.Supp. at 893. We disagree.

The Ninth Circuit ruled in *Renton* that because the challenged ordinance was enacted without benefit of studies specifically relating to "the particular problems or needs of Renton" and the City's justifications for the ordinance were "conclusory and speculative," the regulations, thus, were invalid. *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527, 537 (9th Cir.1984). The district court in the case *sub judice* similarly struck down zoning ordinances because County Council did not have before it at the time it took action on the challenged ordinances "substantial evidence" which provided a factual basis for the Council's conclusion that the regulated businesses actually produced negative secondary effects and the restrictions would advance the stated governmental interests. Reversing the Court of Appeals in *Renton*, the Supreme Court opined that the Ninth Circuit "imposed on the city an unnecessarily rigid burden of proof." *Renton*, 475 U.S. at 50, 106 S.Ct. at 930. We believe the same is true of the trial court in the case at bar. As the Supreme Court counseled in *Renton*, "[t]he First Amendment does not require a city, *before* enacting such an [adult theater zoning] ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed* to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 930–31 (emphasis added).

In *Renton*, the City apparently relied on the experience of, and studies prepared by, the City of Seattle when it enacted its own zoning ordinance. This was found by the Court to be a sufficient legislative record—one which the city "reasonably believed to be relevant to the problem that the city addresses." *Id.* Upon close examination, as the Circuit Court observed, it is apparent that the "record presented by Renton to support its asserted interest in enacting the zoning ordinance is very thin." *Playtime Theaters*, 748 F.2d at 536.[4] Despite strenuous protest that the evidence before the City did not specifically address Renton's problems and was insufficient to justify the burdens that the ordinance imposed upon constitutionally protected expression, the majority found the legislative record substantial enough to support the ordinance. In short, little more than general, nonscientific and conclusory statements about sexually oriented businesses and their negative secondary effects met the City's burden of proof. *See also Interna-*

---

**4.** Justice Brennan, in dissent, elaborated on the paucity of evidence before the City at the time the challenged action was taken:

> The amended ordinance states that its "findings" summarize testimony received by the City Council at certain public hearings. While none of this testimony was ever recorded or preserved, a city official reported that residents had objected to having adult movie theaters located in their community. However, the official was unable to recount any testimony as to how adult movie theaters would specifically affect the schools, churches, parks, or residences "protected" by the ordinance.... The City Council conducted no studies, and heard no expert testimony, on how the protected uses would be affected by the presence of an adult movie theater, and never considered whether residents' concerns could be met by "restrictions that are less intrusive on protected forms of expression." *Schad [v. Borough of Mount Ephraim*, 452

U.S. 61, 74 [101 S.Ct. 2176, 2185, 68 L.Ed.2d 671] (1981)]. As a result, any "findings" regarding "secondary effects" caused by adult movie theaters, or the need to adopt specific locational requirements to combat such effects, were not "findings" at all, but purely speculative conclusions.

> \* \* \* \* \* \*

> [E]ven assuming that Renton was concerned with the same problems as Seattle and Detroit, it never actually reviewed any of the studies conducted by those cities. Renton had no basis for determining if any of the "findings" made by these cities were relevant to *Renton's* problems or needs. Moreover, since Renton ultimately adopted zoning regulations different from either Detroit or Seattle, these "studies" provide no basis for assessing the effectiveness of the particular restrictions adopted under the ordinance.

*Renton*, 475 U.S. at 60–61, 106 S.Ct. at 935–36 (Brennan, J., dissenting) (footnotes omitted).

*tional Food & Beverage Systems v. City of Fort Lauderdale,* 794 F.2d 1520, 1527 (11th Cir.1986) (court indicated City could rely on the experiences of other communities and that challenged ordinances should be tested as zoning controls with reference to the entire city zoning scheme); *Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir.1980) ("city need not await deterioration in order to act" and that its "legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action").

■ Indeed, it would appear that there was less evidence before the City of Renton when its ordinance was enacted than in the record developed by Prince George's County when it enacted and amended the challenged ordinances. Evidence in the County record before enactment of CB–156–1975 contained statements expressing the views of citizens and government officials that adult bookstores adversely effect neighborhoods, may be detrimental to children, and should be made subject to locational controls. Specifically, the record included correspondence from concerned citizens' associations, municipal council members, a youth club leader, a state's attorney, and others testifying to the negative secondary effects of sexually oriented businesses and the need to address such problems through zoning. This evidence was supplemented by extensive untranscribed testimony at widely advertised public meetings and hearings. Administrative bill files accompanying the subsequent ordinances and amendments are replete with similar material. We find this evidence on secondary effects sufficient under *Renton* to withstand a constitutional challenge to the ordinance.

■ Furthermore, in enacting legislation of this sort, we find it reasonable for local legislative bodies to take notice or assume matters of common knowledge and experience. As countless cases addressed by this court and courts across the nation will con-

firm, there are notorious and self-evident conditions attendant to the commercial exploitation of human sexuality which do not vary greatly among generally comparable communities within even so heterogeneous a country as our own. Thus, we are inclined to review the reasonableness of Prince George's County zoning ordinances not solely on the basis of the legislative record before it, but of what it reasonably foresaw in the light of a sufficiently reported national experience copiously documented in the public record. It defies common sense to suppose that community leaders in Prince George's County were not aware of comparable conditions in other localities and of the varied responses being attempted by other governments to similar conditions.[5] Consequently, we must assume that a proper factor in this local legislative determination of governmental interests was what was demonstratively deemed generally experienced in similarly situated communities. *See Wall Distributors,* 782 F.2d at 1169–70 n. 7.

Our recognition of a local legislative body's exercise of legislative notice is consistent with previous holdings of this Court. In *Wall Distributors* and *Hart Book Stores* we affirmed, on slim legislative records, police power statutes analogous to the ordinances in the present controversy. In *Wall Distributors,* we upheld a criminal statute which imposed licensing requirements upon and made criminal the operation of closed-booth movie arcades. From all that appears in *Wall Distributors,* at the time the regulations were enacted, the City Council had little more before it than expressions of concern by citizens and government officials. We rejected the plaintiff's assertion that the City did not have sufficient evidence of the activities and health conditions in closed-booth arcades to provide an adequate basis to support the need for such regulations. Judge Phillips stated:

Although [Plaintiff] assails the lack of evidence of the precise nature of activi-

---

5. The language employed by Prince George's County in its zoning ordinances, which is substantially similar to that adopted by other communities across the country, confirms that County leaders took notice of, indeed sought to follow, other communities' efforts to address the problems attendant to sexually oriented businesses.

ties and health conditions in the booths before adoption of the open booth regulation, a court in constitutional review need only conclude that the City has advanced sufficient government interests. The decision to enact such a regulation constitutes a legislative determination that closed booth showings produce side effects that are destructive of public health, decency and order. To have this determination sustained against constitutional attack, a legislature is not bound to create an evidentiary record that would pass muster on plenary judicial review of legislation's necessity and fitness to achieve desired results. Judicial review goes only to whether the legislative determination of justification and fitness is not facially without factual support, hence not arbitrary and capricious.... [W]e conclude that the City here had a reasonable basis for determining that closed booth showings were sufficiently likely to foster a pattern of conduct inimical to public health, decency and order that in those interests they should be foreclosed.

*Wall Distributors*, 782 F.2d at 1169.[6] Judge Phillips went further in affirming the reasonable exercise of legislative notice:

In assessing the reasonableness of local legislative determinations of ends and means under this quite deferential standard of constitutional review, we may not confine the local legislature to only what it knows and can foresee from purely local conditions already experienced. Legislatures can no more be held bound not to know what the whole world knows than can courts; legislative notice of facts must be deemed to run at least as wide as does judicial notice.

*Id.* at 1169 n. 7.

Similarly, in *Hart Book Stores*, a North Carolina statute required disbursion of sexually oriented businesses, like the ordinance in *American Mini Theatres*. The North Carolina legislature apparently had

nothing more before it when it enacted the legislation than a county health officer's report which was read to a legislative committee by a sponsoring senator. *Hart Book Stores*, 612 F.2d at 828–29 n. 9. Despite this sparse record, we held that

The legislature could reasonably have determined that the development of the "total under one roof" approach to the marketing of sexually explicit materials and devices tended to produce secondary effects destructive of the general quality of life in the neighborhood. While there is no formal legislative history of the law, the record does show that the sponsor of the legislation was concerned to bring these secondary effects to the legislature's attention.

*Id.* at 828 (footnote omitted). The Court further noted:

In concluding that the rational relation between state interest and means of regulation required to support the classification was not present the district courts were also apparently greatly influenced by the dearth of hard evidence before the legislature that the interest was indeed threatened or that the means chosen to protect it would work. In this, we think they insisted on a showing that need not be made in order to uphold legislative efforts to deal with a problem within reach of the police power. In *Mini Theatres* itself, the fact that the legislative body had before it the testimony of a single expert concerning the effect of adult businesses on neighborhoods, *Nortown Theatre, Inc. v. Gribbs*, 373 F.Supp. [363] at 365, [ (E.D.Mich.1974) ], was not thought to draw in question the rationality of the legislative decision to attempt regulation in the particular way chosen. As the Supreme Court pointed out in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 61, 93 S.Ct. 2628, 2637–38, 37 L.Ed.2d 446 (1973): "From the beginning of civilized societies, legislators and judges have acted on various unprovable

---

**6.** It is worth noting that the Supreme Court in *Renton* required only that evidence be "reasonably believed to be relevant to the problem ... addressed," 475 U.S. at 51–52, 106 S.Ct. at 930–

**31.** We similarly required in *Wall Distributors*, 782 F.2d at 1169, decided shortly before *Renton*, only that the legislature have a "reasonable basis" for its action.

assumptions," and "[n]othing in the Constitution prohibits a State from reaching such a conclusion and acting on it legislatively simply because there is no conclusive evidence or empirical data." Furthermore, in judicial assessments of the rationality of legislative means chosen to advance state interests, government "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Mini Theatres,* 427 U.S. at 71, 96 S.Ct. at 2453. The very disparity of legislative approaches in various jurisdictions to regulating the kind of commercial enterprise involved here and the lack of a long record of regulatory efforts underscores the need for a chance for reasonable experimentation.

*Id.* at 832.

The district court further discounted as "post-hoc rationalizations" material collected by the County supporting the rationality of its zoning ordinances and added to the record after the regulations were approved. The supplemental material included the affidavit of a professional land-use planner and numerous studies regarding adult bookstore zoning regulations in various communities. Although the district court acknowledged that this material would have indeed been sufficient to sustain the County's regulations had it been reviewed by the Council prior to enactment of the ordinances, *11126 Baltimore Boulevard,* 684 F.Supp. at 896, the court obviously declined to consider this evidence which was submitted in preparation for the present litigation. A cursory review of the case law reveals that courts have routinely admitted evidence at trial to supplement a legislative record or explain the stated interests behind challenged regulations. It would appear from reviewing the *Renton* case, for example, that testimony of this nature was admitted at trial and considered on appeal. *See also 15192 Thirteen Mile Road, Inc. v. City of Warren,* 626 F.Supp. 803, 818 (E.D.Mich.1985) (trial testimony "clearly demonstrates that adult uses are a source of urban blight").

Clearly, trial testimony and "supplemental" materials cannot sustain regulations where there is *no* evidence in the pre-enactment legislative record. But such is not the case here. As previously noted, the administrative bill files for the 1975 ordinance and subsequent enactments were replete with thoughtful statements from informed, concerned citizens and government officials spelling out the problems posed by adult businesses and ways of addressing these problems.

We thus hold that the County's legislative records show substantial and legitimate legislative interests which the County reasonably believed to be relevant to the problem it sought to address. We find no principle derived from *Renton, American Mini Theatres,* or decisions of this Court which will sustain the unnecessarily rigid burden of proof imposed by the district court, a rule which the *Renton* ordinance itself would have failed to meet. The evidence before the County Council appears more substantial than that held sufficient in *Renton,* only slightly less substantial than that in *American Mini Theatres,* and significantly more substantial than that approved in *Wall Distributors* and *Hart Book Stores.* In the light of this record, coupled with the reasonable exercise of legislative notice and supplemental evidence presented to the trial court, we hold that the County sufficiently demonstrated substantial governmental interests in its regulations.

The third element of the *O'Brien* test concerns whether the County's interest is one unrelated to the suppression of free expression. The relevant question here, as we observed in *Hart Book Stores,* is not whether the perceived "legislative motive" for legislation is unrelated to the suppression of free expression, but whether an identifiable "governmental interest" is so unrelated. *Hart Book Stores,* 612 F.2d at 829. Indeed, the *O'Brien* Court disavowed any inquiry into legislative motive: "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *O'Brien,* 391 U.S. at 383, 88 S.Ct. at 1682.

As the Court further counseled, in conducting this inquiry one must eschew altogether the "guesswork" of speculating about the motives of lawmakers, since legislators may have multiple, unexpressed purposes for enacting legislation. *Id.* at 384, 88 S.Ct. at 1683. Rather, we must look to the face of the regulation and the identifiable interests advanced to justify the regulation. On its face and under the interests advanced by the County, the challenged ordinances are designed to protect children and preserve neighboring property values and land uses. The district court correctly noted that the availability of alternative sites within the County for adult book stores supports the conclusion that suppression of speech-related activities was not behind the County ordinances.[7] *11126 Baltimore Boulevard*, 684 F.Supp. at 896. This also comports with the emphasis the *Renton* Court placed on the necessity of providing alternative avenues and fora of communication. *Renton*, 475 U.S. at 53, 106 S.Ct. at 931–32. We decline to look past the facially apparent effect of the regulation and the interest-based purpose advanced by the County for its enactments.

The final factor of the *O'Brien* test requires that the incidental restriction on First Amendment interests be no greater than is essential to achieve the interests advanced by the government. The County's locational zoning regulations, as the district court noted, are not significantly different from those challenged in *Renton* and *American Mini Theatres*. "Confining adult bookstores to certain specific commercial and industrial zones may well promote the protection of residential areas and children, as may the 1,000–foot restriction and the sign and window-blackening requirements." *11126 Baltimore Boulevard*, 684 F.Supp. at 896–97. *See generally Dumas v. City of Dallas*, 648 F.Supp. 1061, 1070 (N.D.Tex.1986), *aff'd*, *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988). Once again, the availability of alternate sites within the County to locate adult bookstores in conformity with the ordinances confirms that the County took care not to zone such businesses out of existence. We conclude that the regulations are both narrowly tailored to serve the interests advanced by the County and they afford ample alternative avenues of communication and, therefore, satisfy this element of the test.

Accordingly, pursuant to the four-part *O'Brien* analysis, we find the challenged zoning ordinances sufficiently justified, despite their incidental impact upon the Plaintiff's First Amendment rights.

### C.

■ The district court further held that the criteria established by Prince George's County for issuance of a special exception were vague and "subject to possible manipulation and arbitrary application by officials who might object to the contents of the materials sold at adult bookstores."

---

7. An affidavit submitted to the district court by Dale C. Hutchison, Chief of the Zoning Division of the Maryland–National Capital Park and Planning Commission, indicates that there are substantial areas within the County where adult bookstores could be located. According to Mr. Hutchison, adult bookstores, like virtually all commercial land uses and all industrial land uses, are prohibited in residential zones. Over 90 percent of the land area in Prince George's County is residentially zoned. About 47 percent of the County is rural in character and another 28 percent is in half-acre "Rural Residential" zoning. Also, a substantial portion of the non-rural area of the County is in public ownership. Pursuant to the locational restrictions as stated in the zoning ordinances, Mr. Hutchison estimated that there are about 20 different commercial or industrial areas of the County with sufficiently commercially- and industrially-zoned land to allow sites within each area to meet the 1,000–foot setback requirement. These 20 areas are distributed throughout the County, but most are located in more populated areas. The total land area of all available sites for adult bookstores is roughly 1,400 acres. That area is about 6 percent of the 22,500 acres of land in Prince George's County zoned for commercial and industrial uses.

Prince George's County's ordinances, we believe, reserve ample alternative sites for the establishment of adult bookstores. The *Renton* Court held that "the First Amendment requires only that [the City] refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." *Renton*, 475 U.S. at 54, 106 S.Ct. at 931. The ordinances before us today certainly meet this requirement.

*11126 Baltimore Boulevard,* 684 F.Supp. at 899. Therefore, the court concluded that the special exception standards, as applied, constitute an unconstitutional prior restraint. *Id.* We disagree.

Pursuant to Prince George's County Code § 27–317, an applicant for a special exception to operate an adult bookstore must show that the proposed use will be in harmony with the zoning plan and not substantially impair the integrity of the County's Master Plan for community development or adversely affect the health, safety or welfare of residents in the area or be detrimental to the use or development of adjacent properties or the general community. As a prerequisite for special exception approval, the section requires that the proposed use be compatible with the stated interests of the County in enacting the ordinances.

Comprehensive, uncontroverted affidavits submitted by the Chief Zoning Hearing Examiner in Prince George's County, Barry S. Cramp, and the Chief of the Zoning Division of the Maryland–National Capital Park and Planning Commission, Dale C. Hutchison, explained in detail the review process for zoning and special exception applications in Prince George's County. As for the general requirements, pursuant to § 27–317, a special exception applicant must demonstrate that the proposed use will not harm adjacent properties or the neighborhood by creating undue noise, conditions of blight, traffic congestion, unsafe conditions or similar problems. The general requirements of § 27–317 are satisfied by witnesses for the applicant explaining the proposed use and addressing specifically any problems, such as traffic, which are apparent from the application, the Technical Staff Report, or other evidence in the record. As for the specific requirements of § 27–331, the most significant requirement is that a proposed bookstore must be located at least 1,000 feet from any "Residential Zone" or any "school, library, park, playground, recreational facility, church, convent, or monastery." Satisfaction of this requirement is met by objective criteria. The zoning ordinance allows a special exception applicant to obtain a variance from

most dimensional requirements on a showing of practical difficulty or hardship and special conditions attendant to a particular property. As part of special exception approval, the Council may also restrict outdoor displays and advertisements and similar features to ensure that they comport with the general legitimate objectives of the ordinances. Finally, a special exception may not be denied to an applicant if he meets the ordinance requirements by substantial evidence and there is no substantial evidence to the contrary. Under such standards, the District Council has virtually no discretion to deny a special exception application, and it is bound by law, as announced by the Maryland courts, to approve the exception.

It is settled that any license or special exception requirement for a speech-related activity must contain narrow and definite standards to guide the authority granting approval. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). We are persuaded by the language of the challenged ordinances, the evidence in the record, and Maryland case law that the special exception requirements adopted by Prince George's County do not confer unbridled discretion upon County Council and zoning administrators. The provisions under attack provide definite guidelines, consistent with the substantial and legitimate interests advanced by the County, which zoning officials must apply when determining whether to grant a conditional use or special exception permit. The special exception application may not be denied if the applicant meets the specified ordinance requirements by substantial evidence and there is no substantial evidence to the contrary. Thus, County officials are without boundless discretion in approving or rejecting special exception applications.

The special exception provision in the challenged ordinances is not unlike similar ordinances common in Maryland. Under Maryland case law a county's decision pertaining to a special exception application is to be supported by competent material and substantial evidence in the record. *Prince*

*George's County v. Weininger*, 264 Md. 148, 285 A.2d 649 (1972); *Entzian v. Prince George's County*, 32 Md.App. 256, 360 A.2d 6 (1976). Such a standard, well understood by Maryland courts and zoning administrators, acts as a clear check on the manipulation and arbitrary application of the terms of a special exception provision. Moreover, special exception decisions are subject to review in the Maryland courts.

■ All decisions pertaining to a special exception application are subject to timely administrative and judicial review. As revealed by the affidavits submitted by Cramp and Hutchison, such decisions go through a multi-tiered administrative review process including public hearings and an appearance before an examiner who must file a written decision supported by findings of fact (based on evidence in the administrative record) and conclusions of law. If the examiner's recommendation is rejected by the District Council—the legislative body making final decisions in zoning cases—the Council must make and adopt its own findings and conclusions. The rules and guidelines of the administrative review process include time limits—although not written into the challenged adult bookstore ordinances—which are to be followed by reviewers.[8] Plaintiff complains that the risk of delay in the administrative review process is in itself sufficient to render the special exception unconstitutional. We disagree. The diligent exercise of due process takes time, and we find the time limits generally followed by the County to be reasonable for careful review in this sensitive area of the law. The District Council's final decision in any special exception case may be appealed to the Circuit Court for Prince George's County.

As previously stated, Maryland case law also provides safeguards relative to special exception provisions such as those in the challenged ordinances. The Court of Appeals in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981), stated:

This Court has frequently expressed the applicable standards for judicial review of the grant or denial of a special exception use. The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption.* The duties given the Board are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan. . . . [I]f there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal.

*Schultz*, 291 Md. at 10–12, 432 A.2d at 1325 (emphasis in the original). The Court further held:

[T]he appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstanc-

---

**8.** Every step of the administrative review process is not bound by precise time limits. Special exception procedures, including some specified time limits, are outlined in Prince George's County Code § 27–490 *et seq.* The affidavits submitted by Cramp and Hutchison, two officials extensively involved in the special exception process, estimate that the special exception process normally takes about six months. Hutchison further stated that adult bookstores are generally allowed to continue their operations while seeking extensions of time or special exception approval from zoning authorities.

Plaintiff has failed to show, as the district court observed, "that the application process for adult bookstores has generally taken longer than six months, or that adult bookstore applicants have been treated in a manner different from other classes of special exception applicants, or that six months—or one year—is an unreasonable time for processing an application." *11126 Baltimore Boulevard,* 684 F.Supp. at 899 n. 31. Therefore, we concur with the district court that in this case the length of the process in and of itself does not constitute a "prior restraint." *Id.*

es that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone. *Schultz*, 291 Md. at 22–24, 432 A.2d at 1331.

More recently and directly on point, in *5297 Pulaski Highway v. Town of Perryville*, 69 Md.App. 590, 519 A.2d 206, *cert. denied*, 309 Md. 521, 525 A.2d 636 (1987), the Court of Special Appeals of Maryland upheld a zoning ordinance regulating sexually oriented businesses with distance and permit requirements. The Court rejected a First Amendment challenge to a conditional use provision. Although the *Perryville* ordinance included 13 separate criteria to guide the administrating officials, we do not find them significantly more precise than the County standards in the case at bar. (Section 27–317, one recalls, expressly incorporates the purposes and interests of the entire Subtitle.) The *Perryville* standards are indeed textually more detailed than those of Prince George's County; however, the former standards, according to the ordinance, are merely "a further guide" to the Zoning Board to be considered "where appropriate." There is no indication that zoning officials are "bound" by each and every one of the 13 guidelines. *Perryville* confirms our belief that special exception provisions, such as those in the case *sub judice*, have unambiguous meanings both for Maryland courts and zoning officials charged with enforcing the special exception application process.

We conclude, therefore, that Prince George's County's standards do not offend the First Amendment by granting zoning administrators and the District Council undue and arbitrary discretion to deny special exceptions for adult bookstores.

For the reasons stated herein, the judgment of the district court is

REVERSED.