ROSENN, Circuit Judge,
dissenting.
Although I agree with the majority’s analysis of the facts and much of the law, I differ with them with respect to Part III(C), “The Necessity of the Presentation of Pre-Enactment Evidence.” The majority concludes that a municipality may constitutionally enact an ordinance restricting the expression of speech without any legislative record before it justifying such restrictions. I believe that the Borough of Keyport’s failure to articulate at the time of enactment any governmental interest justifying its Ordinance No. 31-92, designed to curb protected speech expression, is a fatal constitutional defect. The defect cannot be cured by allowing the municipality to structure a post hoc record more than four years later and then after judicial review by a trial and appellate court.
I.
The majority and I agree that speech, whether in the form of film, print, or live presentations, though sexually explicit in content but not obscene, is protected under the First Amendment. Maj. op. at 172. We further agree that when a legislative body acts to regulate speech on the basis that its action serves a substantial, content-neutral state interest, as Keyport Borough did in this case, it must come forward with evidence of adverse social effects that justify reasonable time, place, and manner restrictions on speech or expressive conduct; the municipality must support its position “with a reasoned and substantial basis demonstrating the link between the regulation and the asserted governmental interest.” Maj. op. at 173, quoting Mitchell v. Commission on Adult Entertainment, 10 F.3d 123, 132 (3d Cir.1993). It is undisputed that Keyport Borough failed this indispensable requirement. It is also undisputed that the district court sustained the constitutionality of the Keyport ordinance which substantially burdened the exercise of protected speech “without a record supporting the reasonableness of any legislative expectations” that warranted its findings *-1388 pertaining to the likelihood of secondary effects and the ameliorative effect of the ordinance.
[W]e do not yet know how the Borough will seek to justify the ordinance. There is no articulation by the state of what it perceives its relevant interests to be and how it thinks they will be served. This is particularly troublesome in a ease like this, where the legislative findings speak in terms of “serious objectionable operational characteristics,” “deleterious effects,” and “the deterioration of the community” without identifying in any way those [considerations].
Maj. op. at 174.
Where we part company, however, is that the majority, in the face of a decision of the Supreme Court and decisions of a substantial number of United States courts of appeals to the contrary, holds today that a legislative body need have no record before it at the time of enactment justifying an ordinance regulating protected speech. Although I fully empathize with the efforts of the Borough of Keyport to preserve a wholesome quality of community life, I cannot lend my support to the majority’s potentially dangerous disregard of an established safeguard in protection of cherished First Amendment rights, namely, a record at the time of enactment justifying the restrictive regulation of protected speech.
There is no question that local legislative bodies are to be afforded great deference when it comes to zoning matters. Rogin v. Bensalem Township, 616 F.2d 680, 698 (3d Cir.1980). The Supreme Court, however, has made clear that the latitude generally afforded legislatures may be narrowed when First Amendment concerns are at stake. See, e.g., Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 843, 98 S.Ct. 1535, 1543-44, 56 L.Ed.2d 1 (1978). Although sexually oriented materials are due less protection than other forms of expression, Young v. American Mini Theatres, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976), their regulation by zoning nonetheless triggers a heightened level of scrutiny. Courts have reconciled respect for local land regulation concerns with the protection of speech by requiring that municipalities impose restraints on adult entertainment establishments only where there is evidence that they have deleterious “secondary effects” upon the adjacent areas. Id. at 71 n. 34, 96 S.Ct. at 2452 n. 34.
Although adult entertainment establishments may provide a form of entertainment that is entitled to at least some First Amendment protection from municipal authority, see Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65, 101 S.Ct. 2176, 2180-81, 68 L.Ed.2d 671 (1981); American Mini Theatres, 427 U.S. at 61, 96 S.Ct. at 2448, the majority takes the position that the evidence may be developed at any time after the zoning enactment until challenged in court. This runs counter to the protective purpose of such an evidentiary requirement, which is the view taken by the Supreme Court in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and by virtually every other circuit in this country.
We are not free to ignore the purpose of the requirement and the binding precedent. Thus, I find the majority view on this issue unacceptable. The majority makes several sweeping statements to the effect that this court has “never” required more of a municipality than that it make the required showing once a challenge to legislation is raised. It ignores the significance of the timing for the evidentiary record to justify the restrictive impositions of speech; if speech is to be so restricted, the justification should be stated at the time of enactment so that appropriate judicial scrutiny might be made. The majority offers no support whatsoever for its statements, and I do not believe such support exists in our precedents with respect to the regulation of protected speech.
Renton stands only for the proposition that a municipality need not conduct its own pre-enactment studies (i.e., that it may rely on studies conducted by other communities). The unavoidable inference from Renton is that the municipality must rely upon something at the time of enactment justifying its action limiting freedom of speech. The various courts of appeals, including our own in Mitchell, supra, have emphasized the Supreme Court’s statement that
*-1387 [t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.
Renton, 475 U.S. at 51-52, 106 S.Ct. at 931 (emphasis added). Accordingly, not a single court of appeals has interpreted Renton as requiring absolutely no pre-enactment evidence.[1] The position adopted by the majority leaves the Third Circuit an outlier among the United States courts of appeals.
The majority asserts that because Renton and Mitchell sustained the constitutionality of the ordinances before them, they cannot stand for the proposition that a legislative record is a constitutional prerequisite to validity. I strongly disagree. Both the. Ren-ton Court and the Mitchell court leave no doubt that pre-enactment evidence is indeed a constitutional requirement; the courts sustained the ordinance in question because they were satisfied that the enacting body had sufficient evidence before it. See Renton, 475 U.S. at 51-52, 106 S.Ct. at 930-31; Mitchell, 10 F.3d at 134-35.
The majority also maintains that in Mitchell, this court expressly reserved the issue of whether pre-enactment evidence is necessary. Again, I disagree. Mitchell plainly requires such evidence. The skillful use of ellipses ought not to allow us to circumvent binding precedent. The majority asserts that Mitchell says that it was “unnecessary ... to reach or decide ... whether a statute passed without any pre-enactment evidence of need or purpose” can be valid. The full quotation, sans ellipsis, makes quite a different point. It reads: “Here, it is unnecessary for us to reach or decide whether the doctrine of legislative notice of the incidental activities common to adult book stores can save a statute passed without any evidence of pre-enactment evidence of need and purpose.” Mitchell, 10 F.3d at 136 (emphasis added).
We are thus bound by both Supreme Court precedent and the precedent of our own circuit to require at least some evidence at the time of adoption before we sustain a restrictive ordinance of the type currently before us. The majority is of the view that the legislative body need have no factual basis before it at the time of the enactment of the ordinance, and that such a requirement is only necessary when the legislative judgment is challenged in court. Maj. op. at 177-78. If we look to cases decided- in our sister circuits, we also see that no other circuit in this country has espoused the extreme, and I believe incorrect, position taken by the majority. Cases similar to the one at bar have been decided in the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits.[2] Every one of these circuits has *-1386 interpreted Renton to require pre-enactment evidence, and every one of these circuits has insisted upon such evidence before affirming the constitutionality of a restrictive zoning ordinance.
The majority argues that most of the cases I cite from other circuits sustained the ordinance and “therefore cannot stand for the principle that the lack of a legislative record is a fatal constitutional defect.” Maj. op. at 178, n. 6. Those ordinances that were sustained, however, did have legislative records at the time of their enactment. Those held constitutionally defective, Tollis, Inc. v. San Bernardino County, 827 F.2d 1329 (9th Cir. 1987), or constitutionally suspect, Christy v. Ann Arbor, 824 F.2d 489 (6th Cir.1987). cert. denied, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), did not have legislative records.
The majority also looks for support to the decision by this court in Contractors Ass’n v. City of Philadelphia, 6 F.3d 990 (3d Cir. 1993). Aside from the fact that Contractors is inapposite in that it was an affirmative action case, principally sought injunctive relief, and did not involve free speech, it does not stand for the proposition that pre-enactment evidence is unnecessary. We simply stated in Contractors that the preenactment evidence considered by the Philadelphia City Council could be supplemented by post-enactment evidence at the time the case went to trial. Id. at 1003-04. Moreover, we were uncertain whether the supplemental evidence did not in fact constitute preenactment evidence because it was a study involving minimal risk of “insincerity associated with post-enactment evidence” for it consisted “essentially of an evaluation and re-ordering of preenactment evidence.... ” Finally, the court was strongly influenced in permitting the admission of the post-enactment study because “the principal relief sought, and the only relief granted by the district court, was an injunction.” Id. at 1004.
At this juncture, the effects of adult entertainment establishments are so open and notorious that requiring legislative bodies to consult studies or other evidence confirming their deleterious impact may seem unnecessarily burdensome — just another' hoop to jump through in the process of lawmaking. However, this requirement is not without purpose. It limits the risk that legislatures will impose restrictions on speech activities on the basis of supposed secondary effects that on closer scrutiny lack any evidentiary support, and it lends support to the representation that the content-neutral interest articulated by the lawmaking body was not merely pretextual and illicitly designed to suppress speech expression, even that constitutionally protected.[3] I am as sympathetic as the majority to Keyport’s well-intentioned purpose of preserving its community life, but the First Amendment cases show that it is “in those instances where protected speech grates most unpleasantly against the sensibilities that judicial vigilance must be at its height.” Young v. American Mini Theatres, 427 U.S. at 87, 96 S.Ct. at 2460 (Stewart, J., dissenting). Because the Borough of Key-port had no evidence of deleterious secondary effects before it when it enacted its restrictive zoning ordinance, our jurisprudence requires that we strike down the ordinance as unconstitutional.
*-1385 II.
Accordingly, I believe that we must reverse the district court’s grant of the defendants’ motion to dismiss on the due process claims and reverse the district court’s denial of plaintiffs’ motion for summary judgment on the First Amendment challenge to the “adult entertainment uses” Ordinance No. 31-92. For the reasons stated above, I would hold that the ordinance does violate the First Amendment, strike it down, and remand the case to the district court to consider plaintiffs’ request for damages. Finally, I would vacate the denial of attorney’s fees and also remand this issue to the district court for further proceedings.

. The Supreme Court itself, in a case decided four years after Renton, seems to assume that at least some pre-enactment evidence is required in this type of case. "We agree with the Court of Appeals that the reasonableness of the legislative judgment, combined with the Los Angeles study, is adequate to support the city’s determination....” FW/PBS, Inc. v. Dallas, 493 U.S. 215, 236, 110 S.Ct. 596, 610, 107 L.Ed.2d 603 (1990) (emphasis added).

. National Amusements, Inc. v. Dedham, 43 F.3d 731, 742 (1st Cir.) (stating that a legislative body may rely on whatever preenactment evidence it considers to be relevant), cert. denied, — U.S. —, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); 11126 Baltimore Blvd. v. Prince George's County, 886 F.2d 1415, 1421-23 (4th Cir.1989) (finding preenactment evidence of secondary effect "sufficient under Renton to withstand a constitutional challenge"), vacated on other grounds, 496 U.S. 901, 110 S.Ct. 2580, 110 L.Ed.2d 261 (1990); SDJ, Inc. v. Houston, 837 F.2d 1268, 1274 (5th Cir.1988) ("We are persuaded that the City met its burden under City of Renton to establish that there was evidence before it from which the Council was entitled to reach its conclusion ...."), cert. denied, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); Christy v. Ann Arbor, 824 F.2d 489, 493 (6th Cir.1987) ("Although both the Supreme Court in Renton and the Sixth Circuit ... have stated that a city need not conduct new independent studies to justify adult business zoning ordinances, both courts have required some relevant evidence to demonstrate that the zoning ordinance was intended to address the secondary effects of adult businesses"), cert. denied, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); Berg v. Health & Hosp. Corp., 865 F.2d 797, 803-04 (7th Cir.1989) (detailing the pre-enactment evidence and testimony upon which governmental body relied); Postscript Enter. v. Bridgeton, 905 F.2d 223, 227 (8th Cir. 1990) (upholding an ordinance after determining that the city council’s pre-enactment *-1386 findings were adequate); Tollis Inc. v. San Bernardino County, 827 F.2d 1329, 1333 (9th Cir. 1987) ("The Counly must show that in enacting the particular limitations ... it relied upon evidence permitting the reasonable inference that, absent such limitations, the adult theaters would have harmful secondary effects”); International Eateries of America, Inc. v. Broward County, 941 F.2d 1157, 1163 (11th Cir.1991) (noting that Broward County had relied on the experiences of Detroit in enacting its ordinance), cert. denied, 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992).

. The majority suggests that this modest procedural hurdle will be of little practical effect against a "municipal body bent on regulating or curbing speech.” Maj. op. at 178. I agree that a legislature determined to restrict forms of speech ■ to which it is hostile may be able to conceal its impermissible motive behind a quickly assembled evidentiary fig leaf. At the same time, I would reasonably expect that the pre-enactment justification requirement might act as a shield for the First Amendment not merely from those with ill intent, who may be able to circumvent any procedural requirements imposed, but also from constitutionally-minded legislators driven by haste or misconception.