**11126 BALTIMORE BOULEVARD, INCORPORATED, t/a Warwick Books, Plaintiff–Appellant,**

v.

**PRINCE GEORGE'S COUNTY, MARYLAND, Defendant– Appellee.**

No. 93–2151.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1995.

Decided July 5, 1995.

**ARGUED:** Howard J. Schulman, Baltimore, MD, for appellant. Sean Daniel Wallace, Office of Law, Upper Marlboro, MD, for appellee.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Reversed by published opinion. WILKINS, J., wrote the majority opinion, in which ERVIN, C.J., HALL, MURNAGHAN, WILKINSON, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, JJ., and PHILLIPS, Senior Judge, joined. NIEMEYER, J., wrote an opinion

concurring in part and dissenting in part, in which RUSSELL and WIDENER, JJ., joined.

## OPINION

WILKINS, Circuit Judge:

11126 Baltimore Boulevard, Incorporated, t/a Warwick Books, brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), claiming that the Prince George's County, Maryland adult bookstore ordinance, Prince George's County, Md., Code subtit. 27, part 16, violates the First and Fourteenth Amendments of the United States Constitution. The district court granted summary judgment in favor of the County. Warwick Books appeals, contending that the ordinance imposes an unconstitutional prior restraint on speech because it fails to provide for adequate procedural safeguards. We agree and reverse the judgment of the district court.

### I.

In May 1986, Warwick Books filed an action in the United States District Court for the District of Maryland, maintaining that the Prince George's County adult bookstore ordinance in effect at that time violated the First and Fourteenth Amendments. Although the district court concluded that the ordinance constituted a content-neutral time, place, and manner restriction, it found the ordinance unconstitutional as applied to adult bookstores because the interest advanced by the County was not sufficiently supported by evidence in the legislative record and because the standards to be applied in determining whether a special exception should be granted were vague and subject to arbitrary manipulation. *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 684 F.Supp. 884, 891, 899 (D. Md.1988). This court reversed the decision of the district court, concluding that the ordinance constituted a content-neutral time, place, and manner restriction which was narrowly tailored to serve the interest of Prince George's County in minimizing the secondary effects associated with, and the protection of children from, adult bookstores and that it provided for ample other opportunities for speech. *11126 Balti-*

*more Blvd. v. Prince George's County, Md.,* 886 F.2d 1415, 1420, 1426 (4th Cir.1989). Additionally, we determined that the adult bookstore ordinance "provide[d] definite guidelines, consistent with the substantial and legitimate interests advanced by the County, which zoning officials must apply when determining whether to grant a conditional use or special exception permit." *Id.* at 1427. Although not all of the steps in the process leading to a decision on an application for a special exception were bound by precise time limitations, we noted that the length of the process necessary to obtain a special exception did not render the ordinance an unconstitutional prior restraint because the uncontradicted evidence submitted by County officials indicated that the application process normally took approximately six months. *Id.* at 1428 n.8. We also observed that adult bookstores were generally permitted to continue operation while the exception was sought. *Id.*

Thereafter, the Supreme Court rendered its decision in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), holding that a Dallas business licensing scheme constituted an unconstitutional prior restraint on protected speech because it failed to impose adequate procedural safeguards to ensure a prompt decision on a license application and prompt judicial review of a denial. The Court granted Warwick Books' petition for a writ of certiorari, vacated our decision in *11126 Baltimore Boulevard,* and remanded for reconsideration in light of *FW/PBS.* *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 496 U.S. 901, 110 S.Ct. 2580, 110 L.Ed.2d 261 (1990). On remand, we learned that the County had amended its adult bookstore ordinance to remedy the deficiencies identified in the prior district court decision. *11126 Baltimore Blvd. v. Prince George's County, Md.,* 924 F.2d 557 (4th Cir.) (per curiam), *cert. denied,* 502 U.S. 819, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991). And, although the County asserted that it intended to return to its prior zoning ordinance if this court upheld the constitutionality of the prior ordinance, we concluded that the County was seeking an

advisory opinion and dismissed the appeal. *Id.*

Following our dismissal, the County further amended its adult bookstore ordinance. As presently codified, the ordinance prohibits adult bookstores [1] from operating anywhere in the County unless they obtain a special exception and adhere to other requirements imposed by the ordinance.[2] Prince George's County, Md., Code § 27–903. To obtain a special exception, adult bookstores must file an application. In reviewing the application, the ordinance requires that the District Council for Prince George's County consider a number of factors bearing on the suitability of the proposed site for an adult bookstore.[3]

*Id.* § 27–904(b). In addition, the ordinance requires that the administrative review procedure be concluded and that the District Council render its decision on the application for a special exception within 150 days after the acceptance of a complete application. *Id.* § 27–904.01. If the District Council fails to render a decision within 150 days, the application is deemed denied. *Id.* § 27–904.01(i).[4] Although the ordinance itself contains no provision for judicial review, the parties agree that Maryland law provides for judicial review of final administrative decisions. *See* Md. Ann.Code art. 66B, § 4.08 (Michie 1988 & Supp.1994). Under Maryland procedural rules, an adult bookstore seeking review of

---

**1.** The ordinance defines an adult bookstore as:

any commercial establishment which does not otherwise qualify as a theater or nonprofit, free-lending library and which either:

(1) Has ten percent (10%) or more of the value of its stock on the premises, or has ten percent (10%) or more of the value of its stock on display, in books, periodicals, photographs, drawings, sculptures, motion pictures, films, or other visual representations which depict sado-masochistic abuse, sexual conduct, or sexual excitement; or

(2) Has on the premises one (1) or more mechanical devices specifically for the purpose, in whole or in part, of viewing such materials.

Prince George's County, Md., Code § 27–902(b).

**2.** An adult bookstore must blacken or obstruct its windows, doors, or other apertures to prevent persons outside the establishment from viewing the interior; limit the number of its business signs to one; prohibit access to anyone under age 18; and may not locate within 1,000 feet of certain types of property—for example, residentially-zoned property, schools, libraries, parks, playgrounds, recreational facilities, and churches. Prince George's County, Md., Code §§ 27–903(b), 27–904(c)(1).

**3.** The ordinance requires that the District Council consider:

(1) The nature of the proposed site ...;
(2) Traffic conditions, including the resulting traffic patterns;
(3) The nature of the surrounding area and the extent to which the proposed use might impair its present and future development;
(4) The proximity of dwellings, churches, schools, public structures, and other places of public gatherings;
(5) The probable effect of the proposed use on the peace and enjoyment of people in their homes;

(6) Facilities for sewers, water, schools, transportation, and other services, and the ability of the County to supply such services;
(7) The limitations of fire and rescue equipment and the means of access for fire and police protection;
(8) The preservation of cultural and historical landmarks and trees;
(9) The probable effect of noise, vibrations, smoke and particulate matter, toxic matter, odorous matter, fire and explosion hazards, and glare upon the uses of surrounding properties;
(10) The purpose and intent of this Subtitle, as set forth in its other sections;
(11) The most appropriate use of land and structures;
(12) The conservation of property values; and
(13) The contribution, if any, such proposed use, building, or addition would make toward the deterioration of areas and neighborhoods.

*Id.* § 27–904(b).

**4.** Although the Prince George's County zoning laws generally provide the District Council with authority to remand applications for further proceedings or clarification, the County represented at oral argument that it interprets § 27–904.01(j) to require that any remand of an application of an adult bookstore for a special exception be accomplished within the 150–day time frame for decision unless the applicant agrees to an extension. However, this limitation is not plain from the face of the ordinance; the ordinance has not been authoritatively construed in this manner; and the County does not rely on a well-established practice to support its interpretation. *See City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 770 & n. 11, 108 S.Ct. 2138, 2151 & n. 11, 100 L.Ed.2d 771 (1988). Nevertheless, because we conclude that the 150–day time frame for an administrative determination fails to provide for a decision within a reasonably brief period, we need not consider whether the remand provisions render the 150–day period for decision illusory.

an administrative denial of a special exception would face a delay of up to 93 days before briefing could be concluded, assuming that the bookstore could complete each of the steps in the process with which it is charged within one day.[5] The administrative judge of the Circuit Court for Prince George's County issued an administrative order providing that an appeal from an administrative decision relating to the Prince George's County adult bookstore ordinance is to be assigned to a specific judge, who shall schedule oral argument no later than five days after the day for filing a reply brief under the Maryland Rules and shall thereafter render a decision within five days after the conclusion of oral argument. *In re B–Rule Appeals in Adult Bookstore Cases,* Misc. No. ___ (Cir. Ct. Prince George's County, Md. March 19, 1993). Any extension of these judicially-imposed time limitations may not be granted except by consent of the parties. *Id.*

Warwick Books' instant action presents a facial challenge to the constitutionality of the amended ordinance. *See FW/PBS,* 493 U.S. at 223–24, 110 S.Ct. at 603–04. The parties agreed before the district court that there were no material factual disputes and that

the sole issue presented for decision was whether the ordinance imposed sufficient procedural safeguards on administrative and judicial review to avoid being an unconstitutional prior restraint.[6] On cross motions for summary judgment, the district court entered judgment for the County. *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 828 F.Supp. 370 (D. Md.1993). It noted that this court had previously ruled that the six-month estimate for processing special exceptions was not unreasonable and concluded that "if six months is reasonable, then five months must be also." *Id.* at 374. Moreover, the district court found no constitutional deficiency with the promptness of judicial review. *Id.* at 376. Warwick Books appeals this decision, claiming that the ordinance constitutes an unconstitutional prior restraint on speech because it does not provide for adequate procedural safeguards.[7]

**II.**

■■■■■ Although neither party contests the issue, we initially consider whether Warwick Books may pursue a facial challenge to the ordinance based on its claim that the ordinance is an unconstitutional prior restraint

---

5. A petition for judicial review of the final administrative decision must be filed within 30 days. Md. R. 7–203(a). The record shall be filed by the agency within 60 days after the agency receives the petition, but this time period may be extended for up to an additional 60 days. Md. R. 7–206(c)(d). Within 30 days after the clerk sends notice that the record has been filed, the petitioner must file a memorandum. Md. R. 7–207(a). The respondent has 30 days after service of the petitioner's memorandum to file its answering memorandum. *Id.* The petitioner is then given 15 days to file a reply. *Id.*

6. Warwick Books also challenged the amended ordinance on the bases that it is not narrowly tailored to advance a significant state interest, that the "County did not rely upon sufficient evidence in enacting" the ordinance, and that the ordinance granted unfettered discretion to zoning officials and is therefore subject to manipulation and arbitrary application. The parties agreed before the district court that the prior decision of this court required a ruling adverse to Warwick Books on these issues, and the district court summarily ruled in favor of the County on them. *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 828 F.Supp. 370, 374 n.1 (D.Md.1993).

7. While Warwick Books lists other issues in its appellate brief, it failed to brief or argue them. Federal Rule of Appellate Procedure 28(a)(6) requires that an appellate brief "contain the contentions ... on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." Because Warwick Books elected not to assert any reasons for, or arguments supporting, a conclusion that the Prince George's County adult bookstore ordinance is unconstitutional for any of these other reasons, we deem these issues abandoned. *See, e.g., Cades v. H & R Block, Inc.,* 43 F.3d 869, 876 (4th Cir.1994), *cert. denied,* ─── U.S. ───, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Hatley v. Lockhart,* 990 F.2d 1070, 1073 (8th Cir.1993) (" '[A] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.' ") (quoting *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 740 (8th Cir.1985)); *Winston v. Children & Youth Servs. of Del. County,* 948 F.2d 1380, 1385 (3d Cir.1991) (noting that " '[a]n issue that is not addressed [in compliance with Rule 28] in an appellant's brief is deemed waived on appeal' ") (first alteration in original) (quoting *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 88 (3d Cir.1987)), *cert. denied,* 504 U.S. 956, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992). Accordingly, we do not address these issues.

on speech protected by the First Amendment.[8] It is well settled "that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988). Permitting government officials unbridled discretion in determining whether to allow protected speech presents an unacceptable risk of both indefinitely suppressing and chilling protected speech. *See FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 605; *Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965). Without the constraint of specific standards to guide the decisionmaker in judging whether a license should issue, an impermissible danger exists that a government official may decide to exercise his judgment to suppress speech he personally finds distasteful or that an applicant may feel compelled to censor his own speech. *See Lakewood*, 486 U.S. at 757–58, 108 S.Ct. at 2144–45; *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1243, 43 L.Ed.2d 448 (1975). And, without procedural safeguards to ensure a prompt resolution, an applicant may conclude that seeking a determination is too burdensome a task to pursue, impermissibly chilling the exercise of protected speech. *See Freedman*, 380 U.S. at 59, 85 S.Ct. at 739. "[T]hese evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge." *Lakewood*, 486 U.S. at 757, 108 S.Ct. at 2144; *see also FW/PBS*, 493 U.S. at 223–24, 110 S.Ct. at 603–04 (failure to place time limitations on decisionmaker "is a species of unbridled discretion" warranting permission to bring a facial challenge). Accordingly, when these risks are threatened to a significant degree by state regulation, courts must permit those subject to the laws to bring an immediate facial challenge. *Lakewood*, 486 U.S. at 759, 108 S.Ct. at 2145.

■ We conclude that the Prince George's County adult bookstore ordinance bears a close enough relationship to, and engenders a sufficient risk of suppression of, protected expression to permit Warwick Books to bring a facial challenge to the ordinance. There can be little question that the ordinance is focused directly at the placement of bookstores selling non-obscene adult materials that are engaged in conduct protected by the First Amendment, *see FW/PBS*, 493 U.S. at 224, 110 S.Ct. at 603; *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959), and could be used effectively as an avenue for censorship, *cf. Lakewood*, 486 U.S. at 761, 108 S.Ct. at 2146 (comparing scheme regulating the placement of newsracks with the requirement of obtaining a building permit). Nor can it be doubted that a scheme establishing a prior restraint on protected speech that places unbridled discretion in the decisionmaker by failing to impose either objective standards for decision or adequate procedural safeguards creates an impermissible risk of suppression with every application. *See FW/PBS*, 493 U.S. at 223–24, 110 S.Ct. at 603–04.

### III.

■ The County initially disputes that the Prince George's County adult bookstore ordinance is a licensing scheme and contends that the procedural safeguards identified in *Freedman*—and applied to invalidate the sexually oriented business licensing scheme in *FW/PBS*—need not be satisfied. Instead, the County argues that the adult bookstore ordinance is merely a zoning ordinance designed to control or eliminate the secondary effects of adult bookstores and, accordingly, that the time, place, and manner analysis applied in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), is the only inquiry that must be conducted. Thus, the County contends that it could constitutionally provide a time frame of 150 months, rather than 150 days, in which to act on an application by a bookstore for a special exception, or indeed,

---

**8.** The First Amendment provides in pertinent part that "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I, and applies to the states and their political subdivisions through the Fourteenth Amendment, *City of Ladue v. Gilleo*, — U.S. ——, —— n. 1, 114 S.Ct. 2038, 2040 n. 1, 129 L.Ed.2d 36 (1994).

that it could specify no time frame at all for decision.

In *Renton*, the Supreme Court considered a constitutional challenge to a city zoning ordinance prohibiting adult motion picture theaters from locating within 1,000 feet of residential zones, single or multiple family dwellings, churches, parks, or schools. The Court held that because the ordinance was a zoning measure designed to combat the undesirable secondary effects of businesses purveying sexually explicit material, it was to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. *Renton*, 475 U.S. at 49, 106 S.Ct. at 929.

There is no question that the government may appropriately regulate the time, place, and manner of protected speech or that the Prince George's County adult bookstore ordinance is subject to review under the standards applicable to such review. Further, it is undoubtedly true that if Prince George's County had structured its zoning ordinance like the one reviewed in *Renton*, no additional analysis of whether the ordinance constituted an unconstitutional prior restraint on protected speech would be required. However, the Prince George's County adult bookstore ordinance is different from the zoning ordinance reviewed in *Renton* because it prohibits adult bookstores from operating anywhere within the County until permission in the form of a special exception has been granted. In *Renton* no such permission was required, with the result that those wishing to engage in protected speech were immediately free to do so anywhere within the city that met the zoning restrictions imposed by the city ordinance.[9] Thus, the *Renton* Court was not called upon to consider whether a zoning ordinance that is structured in a way that prohibits protected speech until permission is granted must be analyzed as a prior restraint.[10] Following the decision in *Renton*, the Court has made clear that otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to engaging in protected speech must be analyzed as prior restraints and are unconstitutional if they do not limit the discretion of the decisionmaker and provide for the *Freedman* procedural safeguards.[11] *See FW/PBS*, 493 U.S. at 227–28, 110 S.Ct. at 605–06; *see also J.L. Thomas, Inc. v. County of Los Angeles*, 232 Cal.App.3d 916, 283 Cal. Rptr. 815, 820 (1991) (holding zoning ordinance requiring sexually oriented businesses to obtain a conditional use permit was a prior restraint; lack of procedural safeguards rendered ordinance unconstitutional); *cf. Marty's Adult World of Enfield, Inc. v. Town of Enfield, Conn.*, 20 F.3d 512, 515 (2d Cir.1994) (holding zoning special use permit required for all changes in use from retail to entertainment regardless of content of the entertainment did not constitute a licensing scheme amounting to prior restraint because it did not single out business based on content of speech and permitted business to operate elsewhere without obtaining permit). In *FW/PBS*, the Court applied prior re-

---

**9.** The Supreme Court noted in *Renton* that in addition to the zoning ordinance under review, the City of Renton had also passed a resolution imposing "a moratorium on the licensing of 'any business ... which ... has as its primary purpose the selling, renting or showing of sexually explicit materials.'" *Renton*, 475 U.S. at 44, 106 S.Ct. at 927 (alteration in original). However, the decision makes plain that the zoning ordinance—not the resolution concerning business licenses—was the law challenged. *See id.* at 43, 45, 47–55, 106 S.Ct. at 926, 927, 929–33; *see also Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527, 529–30 (9th Cir.1984), *rev'd*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Indeed, it is difficult to imagine how the Court might have reached its conclusion that the 520 acres within the city in which adult theaters could locate under the zoning ordinance allowed for reasonable alternative avenues of communication if it had considered the zoning ordinance in tandem with the "moratorium" on licensing adult businesses.

**10.** Similarly, the decisions relied upon by the *Renton* Court did not address zoning schemes that imposed prior restraints on businesses seeking to engage in protected speech.

**11.** Indeed, the Court has repeatedly stated that "'[a]ny system of prior restraint'" bears "'a heavy presumption against its constitutional validity.'" *FW/PBS*, 493 U.S. at 225, 110 S.Ct. at 604 (alteration in original; emphasis added) (quoting *Southeastern Promotions, Ltd.*, 420 U.S. at 558, 95 S.Ct. at 1246; *see also Freedman*, 380 U.S. at 57, 85 S.Ct. at 738; *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

straint analysis to a Dallas licensing scheme for sexually oriented businesses, regardless of the fact that among the standards imposed upon individuals seeking a license to operate such an establishment was a requirement that the business location comply with applicable zoning restrictions. *FW/PBS*, 493 U.S. at 225–30, 238–42, 110 S.Ct. at 604–07, 611–14; *see Dumas v. City of Dallas*, 648 F.Supp. 1061, 1078–89 (N.D.Tex.1986) (setting forth ordinance), *aff'd sub nom. FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988), *aff'd in part, vacated in part*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Importantly, in concluding that prior restraint analysis must be applied, the *FW/PBS* Court necessarily rejected the position advanced by Justice White, and joined by Chief Justice Rehnquist, that because the Dallas licensing scheme constituted a content-neutral time, place, and manner restriction directed at the secondary effects of adult bookstores, the *Freedman* procedural safeguards were inapplicable. *FW/PBS*, 493 U.S. at 244–49, 110 S.Ct. at 614–17 (White, J., concurring in part and dissenting in part). Accordingly, we reject the County's argument that because its adult bookstore ordinance is merely a content-neutral time, place, and manner zoning restriction directed at the secondary effects of such establishments, it is not subject to prior restraint analysis. Having concluded that the ordinance is properly analyzed as a prior restraint, we turn to consider Warwick Books' argument that the ordinance cannot pass constitutional muster when so analyzed.

## IV.

■ The guarantee of freedom of speech afforded by the First Amendment is abridged whenever the government makes enjoyment of protected speech contingent upon obtaining permission from government officials to engage in its exercise under circumstances that permit government officials unfettered discretion to grant or deny the permission. *See FW/PBS*, 493 U.S. at 223–27, 110 S.Ct. at 603–06. Such discretion exists when a regulation creating a prior restraint on speech fails to impose adequate standards for officials to apply in rendering a decision to grant or deny permission or when a regulation fails to impose procedural safeguards to ensure a sufficiently prompt decision. *Id.*

■ With respect to procedural safeguards, the Supreme Court identified in *Freedman* the following three requirements necessary to guarantee that a decision is rendered promptly:

> (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*Id.* at 227, 110 S.Ct. at 606 (citing *Freedman*, 380 U.S. at 58–60, 85 S.Ct. at 738–40).

Warwick Books asserts that the Prince George's County adult bookstore ordinance fails to provide adequate procedural safeguards—and thus is an unconstitutional prior restraint on speech—because the 150–day time period imposed for a decision prior to judicial review is not a "specified brief period" and because prompt judicial review of a denial of a special exception application is unavailable.[12] We address these contentions in turn.

---

12. In *FW/PBS*, three members of the Court concluded that the third *Freedman* requirement—that the censor bear both the burden of initiating judicial action and the burden of proof in the judicial proceeding—should not apply to the licensing scheme under review. Justice O'Connor, joined by Justices Stevens and Kennedy, reasoned that this requirement was unnecessary to adequately protect freedom of expression because the ordinance was content neutral—and therefore was not presumptively invalid—and because the applicant for a business license had a great incentive to pursue a judicial determination. *See FW/PBS*, 493 U.S. at 228–30, 110 S.Ct. at 606–07. Justices Brennan, Marshall, and Blackmun concurred in the judgment, opining that each of the three *Freedman* procedural safeguards were applicable in analyzing the constitutionality of the Dallas licensing scheme. *Id.* at 238–42, 110 S.Ct. at 611–13. Chief Justice Rehnquist and Justice White would have held that because the licensing scheme was a content neutral time, place, and manner restriction, prior restraint analysis need not be applied. *Id.* at 244–49, 110 S.Ct. at 604–17. Justice Scalia dis-

## A.

■ A prior restraint on speech that imposes no time limitations on the decision-making process plainly fails to satisfy the first requirement set forth in *Freedman*. *See, e.g., FW/PBS*, 493 U.S. at 229, 110 S.Ct. at 606; *Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 802, 108 S.Ct. 2667, 2680, 101 L.Ed.2d 669 (1988); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316–17, 100 S.Ct. 1156, 1161–62, 63 L.Ed.2d 413 (1980) (per curiam). However, no clear guideposts mark our way in determining whether the 150–day time period for decision established in the Prince George's County adult bookstore ordinance constitutes a "specified brief period."

In *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 141–42, 88 S.Ct. 754, 755–56, 19 L.Ed.2d 966 (1968) (per curiam), the Court summarily held that a period of 50 to 57 days for obtaining an administrative decision did not amount to a "specified brief period" in the film censorship context. Warwick Books asserts that *Teitel Film Corp.* should be read to establish a bright-line rule that a 50–day period for an administrative decision necessarily fails to meet the standard set forth in the first *Freedman* requirement. We cannot agree.

■ "The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within *a reasonable period of time,* because *undue* delay results in the unconstitutional suppression of protected speech." *FW/PBS*, 493 U.S. at 228, 110 S.Ct. at 606 (emphasis added). The reasonableness of the time period during which a restraint on speech may operate prior to judicial review "may vary in different contexts." *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 374, 91 S.Ct. 1400, 1407, 28 L.Ed.2d 822 (1971); *see TK's Video, Inc. v. Denton County, Tex.*, 24 F.3d 705, 708 (5th Cir.1994). Thus, a determination of the reasonableness of the time period during which the restraint on speech may constitutionally operate requires an examination of the type of judgments to be made by the government officials and the hardship placed on the class of applicants by the restraint.[13] *See TK's Video*, 24 F.3d at 708.

■ We apply these factors in resolving whether the 150–day time period for decision imposed by the Prince George's County adult bookstore ordinance is a reasonably brief time period. Although zoning decisions necessarily involve a detailed examination of numerous factors, we are unable to conclude that 150 days is a reasonably brief time frame within which to render a decision. The ordinance is designed to ameliorate the adverse secondary effects of adult bookstores and to prevent exposure and access by children to such establishments by imposing time, place, and manner restrictions on the operation of adult bookstores. *See* Prince George's County, Md., Code § 27–901(b). Comparison of schemes devised and time limitations imposed by other jurisdictions to remedy the perceived evils occasioned by adult bookstores discloses that the necessary inquiries may be performed in a shorter time frame than that imposed by Prince George's County. *See TK's Video*, 24 F.3d at 708 (upholding 60–day period for acting on licens-

sented on other grounds. *Id.* at 250–64, 110 S.Ct. at 617–25. The splintered opinion of the *FW/PBS* Court leaves the continued application of the third *Freedman* factor subject to some speculation. However, Warwick Books raises no challenge to the Prince George's County adult bookstore ordinance based upon the third *Freedman* requirement, and therefore we need not address its application.

13. The *type of review necessary* to determine whether a film is obscene, the issue in *Teitel Film Corp.* and *Freedman,* is quantitatively and qualitatively different from the types of evaluations that government officials must make in other contexts. *See Thirty–Seven Photographs*, 402

U.S. at 374, 91 S.Ct. at 1407. And, the need for haste is particularly great in the film exhibition context due to the relatively brief time period during which exhibitors typically present any given film. *See Freedman*, 380 U.S. at 61, 85 S.Ct. at 740. A determination concerning the licensing or zoning of an adult bookstore, on the other hand, necessarily entails scrutiny of a greater variety of factors, and the applicant for permission to operate such an establishment has a greater incentive to endure the burdens associated with securing permission because approval of the application "is the key to the applicant's obtaining and maintaining a business." *FW/PBS*, 493 U.S. at 230, 110 S.Ct. at 607.

ing application for adult bookstore); *Chesapeake B & M, Inc. v. Harford County, Md.*, 831 F.Supp. 1241, 1249–50 (D. Md.1993) (44–day time period for review of adult bookstore licensing application not unreasonable), *rev'd in part, vacated in part, and remanded on other grounds*, 58 F.3d 1005 (4th Cir.1995) (en banc); *Wolff v. City of Monticello*, 803 F.Supp. 1568, 1574 (D. Minn.1992) (noting that 90–day time period for decision on adult bookstore license application not unreasonable per se); *see generally Thirty–Seven Photographs*, 402 U.S. at 371–74, 91 S.Ct. at 1405–07 (construing federal statute imposing a prior restraint to require that judicial review be sought within 14 days and concluding that delays of between 40 days and six months could not be sanctioned). In addition, the record is devoid of any evidence that would support the necessity of a 150–day delay to complete the administrative review process for the zoning scheme implemented by the County.

■ Moreover, the Prince George's County adult bookstore ordinance imposes a significant hardship on such establishments. In *Riley*, 487 U.S. at 801–02, 108 S.Ct. at 2680–81, the Court concluded that a North Carolina law, which required professional fundraisers to apply for a license prior to soliciting charitable contributions in the state, was unconstitutional because it failed to impose time limitations on when a decision on the application had to be rendered and compelled the fundraisers' silence during the delay. *See also Famine Relief Fund v. West Virginia*, 905 F.2d 747, 753 (4th Cir.1990) (applying *Freedman* factors and holding that a West Virginia charitable solicitation statute was an unconstitutional prior restraint on speech in part because it prohibited charitable organizations, whose application for a permit to solicit in the state had been denied, from doing so pending judicial vindication). Similarly, the Prince George's County adult

bookstore ordinance requires that applicants for a special exception refrain from operating until the exception is granted.[14]

Although the County may properly regulate the time, place, and manner of the operation of an adult bookstore through its zoning ordinances, to pass constitutional muster any zoning ordinance imposing a prior restraint on the exercise of protected speech must provide for a determination in a specified and reasonably brief period of time. Under the circumstances presented here, we cannot say that the 150–day time period for decision imposed by the County satisfies this standard.

**B.**

■ Warwick Books also asserts that the ordinance imposes an unconstitutional prior restraint on speech because Maryland law fails to assure prompt judicial review of an administrative denial. Although the County acknowledges that access to the judicial system would not be available until a final administrative decision is rendered—a period of up to 150 days after an application is filed—it nevertheless asserts that prompt judicial review is available because an applicant for a special exception may seek judicial review of the denial of its application immediately after an administrative decision is rendered.

The County bases its argument on Part II of Justice O'Connor's opinion in *FW/PBS*, maintaining that it relaxes *Freedman*'s prompt judicial review requirement. Although the County recognizes that Justice O'Connor was writing for only three members of the Court in this portion of her opinion, it argues that because three other members of the Court—Chief Justice Rehnquist, Justice White, and Justice Scalia—concurred in part and dissented in part, reasoning that the Dallas licensing scheme

**14.** We note that when the County amended its adult bookstore ordinance effective June 30, 1992 to impose time limitations on the decision-making process, it extended an amortization period for certified nonconforming adult bookstores. The amended ordinance provided that nonconforming adult bookstores could not continue to operate unless they applied for and obtained a special exception, but they were permitted to operate until January 1, 1993. Prince George's County, Md., Code § 27–903(c). Thus, the ordinance provided a time period within which adult bookstores could continue to operate while seeking a special exception. Whatever effect this grace period might have with respect to a challenge to the ordinance as applied, it does not resolve the facial challenge advanced by Warwick Books.

should not be analyzed under *Freedman* at all, these Justices implicitly agreed with Justice O'Connor that the *Freedman* protections should be diminished. We disagree.

Justice White and Chief Justice Rehnquist did not join in Part II of Justice O'Connor's opinion, arguing instead that because the licensing scheme was a valid time, place, and manner restriction, it need not be analyzed as a prior restraint. Justice Scalia believed that the sale or rental of sexually explicit materials was not protected by the First Amendment, so there was no prior restraint of protected speech; consequently, he refused to join Part II of Justice O'Connor's opinion. Since these three Justices did not believe that the ordinance was subject to prior restraint analysis, it is impossible to conclude that if they had agreed with Justice O'Connor that the licensing scheme was subject to prior restraint analysis, lesser protection should have been provided.

Moreover, it is well settled that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)). Thus, even if Justice O'Connor's opinion in *FW/PBS* could be read as having altered the *Freedman* "prompt judicial review" factor (which it cannot, as discussed below), because this position obviously did not gain the assent of the concurring Justices (Brennan, Marshall, and Blackmun, who made clear that they believed that all three of the *Freedman* procedural safeguards were required), *FW/PBS* could not have modified *Freedman.*[15]

Further, Part II of Justice O'Connor's opinion did not relax the *Freedman* prompt judicial review requirement. The County focuses on Justice O'Connor's language refer-

ring to the possibility or availability of, or an "avenue for," "prompt judicial review" to conclude that Justice O'Connor reduced the protection required by the prompt judicial review factor of *Freedman.* However, Justice O'Connor never gave any indication that she was altering the prompt judicial review requirement. Rather, Justice O'Connor reasoned: (1) that in *Freedman* three procedural safeguards were identified; (2) that because licensing schemes are different from censorship schemes less protection is necessary for licensing schemes; (3) that the "core policy underlying *Freedman*" was that a "license for a First Amendment-protected business *must be issued*[16] within a reasonable period of time" to avoid "the unconstitutional suppression of protected speech"; and (4) that *"[t]hus, the first two safeguards are essential."* *FW/PBS,* 493 U.S. at 227–28, 110 S.Ct. at 606 (emphasis added). She next concluded that the two essential procedural safeguards (time limits on decision and prompt judicial review) were not satisfied by the Dallas licensing scheme, and it therefore was an unconstitutional prior restraint. Finally, she determined that the third *Freedman* factor need not be applied to the licensing scheme because of its differences from a censorship scheme. Again, nothing in this analysis can be read to support the conclusion that Justice O'Connor was relaxing the prompt judicial review requirement.

Nor can Justice O'Connor's choice of the words of "prompt judicial review" support a conclusion that she relaxed this requirement. First, when Justice O'Connor refers to "prompt judicial review," she cites to *Freedman,* and it is unmistakable that *Freedman* required that "[a]ny restraint imposed in advance of a *final judicial determination on the merits* must ... be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." *Freedman,* 380 U.S. at 59, 85 S.Ct. at 739 (emphasis added). In addition, other decisions prior to Justice O'Connor's in *FW/PBS,* including *Freedman,* used the phrase

---

15. Rather, the narrowest ground for decision was that the licensing scheme at issue constituted a prior restraint requiring procedural safeguards and that two such safeguards were lacking.

16. Obviously, a license which has been erroneously denied at the administrative level cannot be "issued" until a judicial determination is rendered.

"prompt judicial review" to mean a prompt judicial *determination. See, e.g., Southeastern Promotions, Ltd.,* 420 U.S. at 561–62, 95 S.Ct. at 1247–48 (holding that "board's system did not provide a procedure for prompt judicial review" where judicial decision on the merits was not obtained for more than five months); *Thirty–Seven Photographs,* 402 U.S. at 367–70, 91 S.Ct. at 1403–05 (using the term "prompt judicial review" as synonymous with "a prompt judicial decision"); *Blount v. Rizzi,* 400 U.S. 410, 417, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971) (stating that in *Freedman* the Court "held that to avoid constitutional infirmity a scheme of administrative censorship must ... require 'prompt judicial review'—a final judicial determination on the merits within a specified, brief period"); *Freedman,* 380 U.S. at 58–60, 85 S.Ct. at 738–40 (using "prompt judicial review" as synonymous with "prompt judicial decision"). Thus, it is clear that Justice O'Connor was alluding to a judicial decision within a specified, brief time when she referred to "prompt judicial review" and that in using these terms interchangeably, she broke no new ground. Thus, read in context, it is simply not reasonable to take her statements that there must be "an avenue for" or "the possibility of" "prompt judicial review" to mean that mere access to judicial review is sufficient to satisfy this requirement.

One additional point suggests that this is the case. In his dissent from Part II of Justice O'Connor's opinion, Justice White wrote that "no one suggests that licensing decisions are not subject to immediate appeal to the courts." *FW/PBS,* 493 U.S. at 248, 110 S.Ct. at 617. Indeed, while the Dallas licensing scheme itself did not provide for the judicial review, judicial review of decisions of the permit and license appeal board was available. *See* Dallas Tex., Code § 2–96 (1994); *Dumas,* 648 F.Supp. at 1067 n. 16; *see also M.J.R.'s Fare of Dallas, Inc. v. Permit & License Appeal Bd. of Dallas,* 823 S.W.2d 327, 329 (Tex.Ct.App.1991). Thus, the majority of the *FW/PBS* Justices held that there was no "avenue for prompt judicial review," 493 U.S. at 229, 110 S.Ct. at 606, even though the possibility of immediate review by the courts following a license denial was available.

In sum, because Justice O'Connor's decision in *FW/PBS* cannot properly be read to relax the *Freedman* prompt judicial review requirement, and because a majority of the Justices of the Supreme Court did not join this reasoning, even if it were susceptible to the reading the County would give it, this court has no authority for failing to apply the prompt judicial review requirement of *Freedman.*[17] In *Freedman,* the Court held that

17. As an additional support for its contention that the availability of judicial review satisfies the prompt judicial review requirement set forth in *Freedman,* the County points to the decisions of several other courts of appeals and suggests that other courts uniformly have held that mere availability of judicial review is adequate. However, this is simply not so; the circuits are split on this question.

The first decision to which the County points is *Graff v. City of Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994). *Graff* was an en banc decision of the Seventh Circuit in which twelve judges participated. The appeal produced a badly divided court, much like *FW/PBS* itself. In addressing the argument that a Chicago licensing scheme for newsstands did not provide "prompt judicial review," the "principal opinion" authored by Judge Manion concluded that although the Chicago scheme did not itself provide for judicial review, judicial review of the licensing decision *was* available through a common-law writ of certiorari. Although Judge Manion's opinion apparently concludes that this review is adequate to satisfy the

"prompt judicial review" requirement, it does not discuss whether the procedures available for a common-law writ require a prompt judicial *decision.* And, of critical importance, only *five* judges (including Judge Manion) joined this principal opinion, which contains the only portion of the *Graff* decision to which the County points in support of its conclusion. Therefore, Judge Manion's opinion is not a majority opinion of the Seventh Circuit. Interestingly, the seven judges who wrote to concur in the judgment or dissent all indicated their disagreement with Judge Manion's conclusion that the mere *availability* of judicial review satisfied the prompt judicial review requirement. Thus, the *Graff* decision does not hold that the prompt judicial review requirement *is* satisfied when judicial review *is* merely available.

The other two decisions to which the County points, *TK's Video,* 24 F.3d at 708–09, and *Jews for Jesus, Inc. v. Massachusetts Bay Transportation Authority,* 984 F.2d 1319, 1327 (1st Cir. 1993), do hold that the requirement of "prompt judicial review" is satisfied by providing access to the courts after an administrative denial despite the fact that there was apparently no re-

procedures which allowed up to four months for an initial judicial decision did not provide for sufficiently prompt judicial review in the film censorship context. 380 U.S. at 55, 59–60, 85 S.Ct. at 737, 739–40. After holding that the Maryland procedures failed to pass constitutional muster, the Court compared them with those in a New York statute fashioned to prevent the sale of obscene books that was upheld in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957) (requiring a trial one day after the joinder of issues and a resolution within two days after the trial). *Freedman,* 380 U.S. at 60, 85 S.Ct. at 739–40; *see also Blount,* 400 U.S. at 419–22 & n. 7, 91 S.Ct. at 430–31 & n. 7 (holding that a federal statute constituted an unconstitutional prior restraint on speech in part because it failed to provide for a prompt judicial adjudication and reiterating "that the procedure considered in *Kingsley Books* . . . [was] a model") (internal quotation marks omitted); *Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 690 n. 22, 88 S.Ct. at 1306 n. 22 (1968) (holding prompt judicial review was assured by provision requiring a judicial determination within nine days of the decision of the administrative body); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) (noting that prior restraint on speech "tolerated . . . only where it . . . assured an almost immediate judicial determination of the validity of the restraint"); *Redner v. Dean,* 29 F.3d 1495, 1501–02 (11th Cir.1994) (holding that prompt judicial review is never available when judicial review may not be sought until exhaustion of administrative remedies under a scheme that fails to

provide adequate time restraints for administrative decision), *cert. denied,* —— U.S. ——, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *cf. East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 225 (6th Cir.1995) (indicating that potential delay of five months from application to judicial hearing is impermissible). In *Thirty–Seven Photographs,* the Court noted that delays in judicial determination as long as three months could not be sanctioned and construed a federal statute to require a judicial decision within 60 days to uphold the constitutionality of the statute. 402 U.S. at 372–74, 91 S.Ct. at 1406.

■■■ The parties do not dispute that even with the benefit of the administrative order, at least 103 days would typically be required to obtain a judicial ruling after the denial of an application for a special exception. Given the instruction provided by the Court, we cannot conclude that a delay in excess of three months for judicial decision, following a 150–day time frame for an administrative decision, ensures a sufficiently prompt judicial review.[18]

### V.

The questions presented are difficult, and there is little authority to guide our decision. Nevertheless, it is undisputed that an adult bookstore which seeks a special exception will face an eight-month delay from the date the application is filed to a judicial resolution of the denial of the application. Given current precedent, we cannot accept that the length of this delay can be considered the type of brief specified period followed by

---

quirement for a prompt judicial decision. But, in neither decision does the court attempt to argue, as does the County, that its holding can be supported by reading *FW/PBS* to relax the traditional "prompt judicial review" requirement. Further, neither decision attempts to analyze why the conclusion it reaches is consistent with Supreme Court precedent in this area. Thus, we do not find these decisions persuasive on this question.

Finally, after the briefing of this appeal was completed, the Sixth Circuit decided *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 224–25 (6th Cir.1995), which unequivocally rejected the argument that mere access to judicial review satisfies the *Freedman* prompt judicial review requirement.

**18.** The County stresses that it has no control over the time limitations imposed by the Maryland Rules. However, the County is not without means to ensure that judicial review proceeds more promptly. For example, the County may impose upon itself more limited time restraints for filing the administrative record and responsive pleadings and memoranda than those provided by Maryland procedure. Moreover, the County could avoid the constitutional problem engendered by its present scheme by permitting adult bookstores to operate until a judicial determination is rendered affirming a denial of a special permit.

prompt judicial review that is required to guard against the abridgement of protected speech. Thus, we hold that the Prince George's County adult bookstore ordinance is an unconstitutional prior restraint on protected speech.

*REVERSED.*

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

In this case and the related case of *Chesapeake B & M, Inc. v. Harford County, Md.,* 58 F.3d 1005, both decided today, the majority opinions have stricken down as unconstitutional ordinances enacted by two Maryland counties to regulate the secondary effects of adult bookstores whose business is to sell sexually explicit materials and to provide sexually oriented entertainment. These ordinances do not *directly* prohibit the sale of sexually explicit material; rather they prohibit any "adult bookstore," as defined in each ordinance, from conducting business without first obtaining a license (a "permit" in Harford County and a "special exception" in Prince George's County).

The ordinance in this case—in contradistinction to that in *Chesapeake B & M*—does confer some discretion upon county executives in determining whether to approve a special exception to operate an adult bookstore.[1] The county's District Council will grant a "special exception" permitting the operation of an adult bookstore only if it finds that the bookstore "meets the standards" set forth in § 27–904(b) & (c). Those standards consist of 13 factors relating to the potential effect of the bookstore on the land and its surroundings.

The Prince George's County ordinance is a zoning regulation which seeks to impose restrictions on the operation of an adult bookstore in order "to lessen or control the adverse secondary effects of such stores on their surrounding neighborhoods," § 27–901(b)(1), and "to prevent access to such stores by children," § 27–901(b)(3). The ordinance does not prohibit outright the sale of sexually explicit material; rather it prohibits the sale of such material by an adult bookstore where the aggregation of such sales tends to produce the adverse secondary effects that the county seeks to ameliorate.

Because some substantive discretion is conferred upon Prince George's County officials by this ordinance, distinguishing it from the Harford County ordinance which is the subject of our related decision in *Chesapeake B & M,* I am inclined to agree that the safeguards described in *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), should be applied in this case. I also concur in the majority's conclusion that the 150–day time frame for administrative decisionmaking may be too long and may confer too much discretion in respect to the length of the decisionmaking process. *See FW/PBS,* 493 U.S. at 227, 110 S.Ct. at 605. But I disagree with the majority's conclusion that the Prince George's County ordinance is unconstitutional under *FW/PBS* because it does not provide Warwick Books with prompt access to judicial review.[2] On the same day that the county denies an application for a special exception, the applicant may obtain access to the courts of Maryland. I conclude that this is all that is required by the *FW/PBS* safeguard that expeditious review be available. Contrary to the position taken by the majority, I would interpret that safeguard as requiring only that exit from the executive branch (the administrative permit system) be prompt and that access to the judicial system be immediately available. Since the nature of the safeguard is *access* to a court, and not the rendering of any given decision of the court, I cannot subscribe to the position that the procedural safeguard requires prompt *completion* of the judicial review any more than it requires a particular result. At least three other circuits share

---

1. Adult bookstores are defined as commercial establishments which have 10% or more of the value of their stock in sexually explicit materials. Section 27–902(b)(1).

2. Justice O'Connor's opinion in *FW/PBS* held, in striking down the Dallas ordinance as unconstitutional, that (1) any restraint on speech prior to judicial review can be only for a brief period during which the status quo is maintained and (2) "expeditious judicial review of [the executive's] decision must be available." 493 U.S. at 227, 110 S.Ct. at 606.

this view. *See Grand Brittain, Inc. v. City of Amarillo,* 27 F.3d 1068 (5th Cir.1994); *TK's Video v. Denton County,* 24 F.3d 705 (5th Cir.1994); *Graff v. Chicago,* 9 F.3d 1309 (7th Cir.1993) (en banc); *Jews for Jesus v. Massachusetts Bay Trans. Author.,* 984 F.2d 1319 (1st Cir.1993). *Cf. O'Connor v. City and County of Denver,* 894 F.2d 1210 (10th Cir.1990) (declining to apply *FW/PBS* safeguards where it found adult entertainment licensing scheme imposed no restraint and where plaintiff theater was closed because of significant number of acts of public indecency).

In any event, in this case the Maryland Rules provide for a prompt judicial decision.

### I

Beginning with the conclusion that "expeditious judicial review of [the executive's] decision must be available," *see FW/PBS,* 493 U.S. at 227, 110 S.Ct. at 606, the majority opinion errs in interpreting the nature of that safeguard to mean that "expeditious judicial review" requires a prompt "judicial ruling" or "judicial decision." Op. at 1001. That additional requirement of securing a prompt judicial decision is not, I submit, imposed by *FW/PBS,* is unnecessary in the absence of direct prior restraint of speech, and misconstrues the essence of the safeguard.

First, it must be recognized that *FW/PBS* provides no Court opinion addressing the issue. Justice O'Connor's opinion, on which the majority relies, was joined only by Justices Stevens and Kennedy. While Justices Brennan, Marshall, and Blackmun joined in a separate opinion urging greater protection than that articulated in Justice O'Connor's opinion, they did not join in her opinion.[3] 493 U.S. at 238, 110 S.Ct. at 611. Consequently, the majority can logically claim no greater safeguard than that imposed in Justice O'Connor's opinion.

As Justice O'Connor concluded in *FW/PBS,* a licensing ordinance designed to address the secondary effects of adult oriented businesses need not provide the full procedural safeguards required of a direct censorship law. 493 U.S. at 228, 110 S.Ct. at 606. Such a licensing law impinges only incidentally upon protected speech, because it is aimed at the secondary effects of such speech rather than its content. As Justice O'Connor noted in *FW/PBS,* the licensor need not bear the burden of going to court or the burden of proof once in court. *See* 493 U.S. at 227–230, 110 S.Ct. at 605–07. Moreover, an ordinance of the type under consideration there must only provide the "possibility of prompt judicial review," 493 U.S. at 228, 110 S.Ct. at 606, or "an avenue for prompt judicial review," *id.* at 229, 110 S.Ct. at 606. Thus, I conclude from Justice O'Connor's express language that an adult bookstore licensing law that does not impose direct censorship of materials need only provide for prompt *access* to judicial review and need not guarantee a prompt *completion* of the judicial review process.

Since the decision in *FW/PBS,* at least three courts of appeals which have considered the appropriate standard to be applied with respect to judicial review of license denials implicating free speech have reached the same conclusion. *See Graff v. Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc) (holding that *availability* of state's common law procedure for seeking a writ of certiorari in court to review an administrative agency decision regarding the licensing of sidewalk newsstands is sufficient to meet the *FW/PBS'*s "prompt judicial review" requirement); *TK's Video v. Denton County,* 24 F.3d 705, 709 (5th Cir.1994) (holding that *FW/PBS'*s requirement of "prompt judicial review" is satisfied by "access [to] the courts within a brief period," i.e., by giving the aggrieved party 30 days to appeal to court); *Grand Brittain, Inc. v. City of Amarillo, Texas,* 27 F.3d 1068, 1070 (5th Cir.1994) ("We have interpreted [*FW/PBS'*s "prompt judicial review"] language to require only access to the courts within a specified brief period."). *See also Jews for Jesus v. Massachusetts Bay Transportation Authority,* 984 F.2d 1319, 1327 (1st Cir.1993) (applying *FW/*

---

**3.** These justices urged application of the safeguards articulated in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), a

position not shared by a majority of the Court. 493 U.S. at 239, 110 S.Ct. at 611.

*PBS*'s standard to regulations of expressive activity in subway station, and holding that "prompt judicial review" is provided where applicant denied license may appeal denial in court and is granted hearing); *cf. O'Connor v. City and County of Denver*, 894 F.2d 1210 (10th Cir.1990) (declining to apply any of the *Freedman* procedural safeguards (as recast in *FW/PBS*) to the First Amendment analysis of adult entertainment licensing scheme on the ground that such scheme did not involve prior restraints and was based instead on licensee's failure to prevent patrons' engagement in public sex acts in theater).

Moreover, I believe that the nature of the safeguard—assurance of *the availability* of prompt judicial review—cannot meaningfully be interpreted to include the rendering of a court's decision. The essence of the safeguard is the *review* and not the result. When an executive official is given discretionary authority that can have the effect of censoring protected speech, the executive's decision must be reviewable by the judicial branch, and the promptness of instigating that judicial review is the requisite safeguard. Since there are no external checks on the judiciary's review, the scope of the safeguard of necessity ends with access to the judicial branch. If the judiciary agrees that protected speech has been improperly censored, it can act within hours. On the other hand, if it concludes that the would-be censor acted properly and did not unconstitutionally suppress speech, then its decision ends the matter. While the judiciary may not get it right, its *review*, and not the result it reaches, defines the limit of the safeguard.

Thus, I would conclude that prompt judicial review as a safeguard means prompt *exit* from the executive branch and immediate *entry* into the judicial branch, and I believe that the better reading of *FW/PBS* supports this conclusion.

## II

Even though I am satisfied that the Prince George's County ordinance meets the requirement of *FW/PBS* of providing prompt *access* to the courts, I note nevertheless that the Maryland Rules provide ample mechanisms for completing judicial review expeditiously should the need arise. Warwick Books is entitled to appeal to the Prince George's County Circuit Court on the very day it receives the county's decision, and it need not wait until the end of the 30-day period. Md. Rule 7–203. The record must be filed by the county within 60 days, but the rule provides expressly that"the court may shorten or extend the time for transmittal of the record." Md. Rule 7–206(d). Within 30 days after notification that the record has been filed, Warwick Books must file a memorandum. Md. Rule 7–207(a). The county has 30 days thereafter to file its answering memorandum, *id.*, and Warwick Books then has 15 days to reply. *Id.* Pursuant to a special Prince George's County Circuit Court administrative order, oral argument must be held within five days of the filing of the reply brief, and a decision must be rendered five days thereafter.

In addition to these specific procedural and administrative court rules, the Maryland Rules provide generally that the times specified by the rules "requir[ing] or allow[ing] an act to be done" may be shortened on the motion of any party and for cause shown. Md. Rule 1–204. Moreover, the Maryland Rules provide that a person may apply for an *ex parte* injunction or an interlocutory injunction at any time. The procedures for obtaining an *ex parte* injunction assure a most expedited schedule. *See, e.g.,* Md. Rule BB72. These rules are repeatedly used to achieve the most prompt review and appeal of a broad array of time-sensitive issues, such as election disputes, death penalty cases, and public health matters.

There can be, I submit, no persuasive argument that prompt judicial review is not available through the ordinance, the administrative order, and through Maryland's rules of civil procedure. Accordingly, I dissent from that conclusion reached by the majority.

I am authorized to report that Judge Russell and Judge Widener join in this opinion.