**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BERNARD L. PETERSON,
Plaintiff-Appellant,

v.                                                        No. 95-1222

LANIER WORLDWIDE, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-94-439-R)

Submitted: July 25, 1996

Decided: August 12, 1996

Before LUTTIG and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Sa'ad El-Amin, EL-AMIN & CRAWFORD, P.C., Richmond, Vir-
ginia, for Appellant. Daniel M. Shea, C. Adair Bledsoe, SMITH,
CURRIE & HANCOCK, Atlanta, Georgia; Robert H. Patterson, Jr.,
Eva S. Tashjian-Brown, MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bernard L. Peterson ("Peterson") appeals from the district court's grant of summary judgment in favor of Lanier Worldwide, Inc. ("Lanier"), on his claim of racially motivated constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1981 & Supp. 1996).**1**  The district court found that Peterson did not establish a prima facie case of constructive discharge due to his race because his working conditions were not intolerable nor did Lanier deliberately intend to force him to resign. We affirm.

I.

Peterson, a black male, joined Lanier as a customer service representative in 1978. In 1982, Lanier promoted Peterson to district service manager ("DSM"), and he continued to work as a DSM until he resigned in July 1993 at age forty-five. In February 1993, Lanier implemented a nationwide reorganization and reduction in force that eliminated four of seventeen DSM positions in Peterson's region; Peterson's position was one of the four.

Lanier based its decision to reclassify Peterson on two factors. First, Lanier compiled a stack ranking of all DSMs from a composite score derived from seniority with Lanier, seniority as a DSM, and percentage attainment of annual operating plan for profit and revenue

_____

**1** Because Peterson did not present any arguments in his brief regarding his age discrimination and 42 U.S.C. §§ 1981, 1983 (1988) claims, he has abandoned those claims. See Tucker v. Waddell, 83 F.3d 688, 690 n.1 (4th Cir. 1996) (finding that failure to present arguments in briefs constitutes waiver of appellate review) (citing 11126 Baltimore Blvd., Inc. v. Prince George's County, 58 F.3d 988, 993 n.7 (4th Cir.), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3393 (U.S. Dec. 4, 1995) (No. 95-550)).

for the preceding two fiscal years. Peterson ranked fifteenth out of sixteen DSM positions.[2] Second, Lanier considered overall performance evaluation ratings from the last four years. Three of the four evaluations placed Peterson in the "needs improvement" category. Finally, Lanier's human resources director submitted an affidavit stating that he had reviewed the reclassification decisions to ensure that no discrimination had occurred.

Lanier offered Peterson a position as master customer service representative ("MCSR"). Although the MCSR position was a two-level demotion for Peterson with a reduction in pay from $55,275 to $36,450, Peterson admitted in his deposition that the MCSR position did not involve demeaning duties. Moreover, nationwide, seven other DSMs--all white--were reassigned to MCSR positions, all of whom accepted the position with a pay reduction comparable to Peterson's.

Because he could not meet his financial obligations with the pay reduction, Peterson chose to resign before the effective date of the reclassification. Peterson also stated that he resigned because he was the victim of race and age discrimination. Specifically, he claimed that he was embarrassed when he could not access the computer system because the password had been changed. Finally, Peterson asserted that he would not have resigned had he--rather than a white male who was Peterson's subordinate--been given the opportunity to transfer to another city.

After a hearing, the district court granted Lanier's summary judgment motion, finding that Peterson failed to establish a prima facie case of discrimination. This appeal followed.

II.

This court reviews de novo district court orders granting or denying summary judgment. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996). District courts may enter summary judgment only when there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. Miller v. Leathers, 913 F.2d

_____

[2] At the time of the reorganization, one of the DSM positions was vacant.

3

1085, 1087 (4th Cir. 1990) (en banc), cert. denied, 498 U.S. 1109 (1991). The facts and inferences to be drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).

In order to state a claim for racially motivated discharge under Title VII, the plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Peterson challenges the district court's finding that he failed to establish that he was constructively discharged. Constructive discharge occurs when the employer creates intolerable working conditions in a deliberate attempt to force the employee to quit. Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). The plaintiff must show both (1) the deliberateness of the employer's actions; and (2) the intolerability of the working conditions. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995)). As this court has stated: "Deliberateness exists only if the actions complained of `were intended by the employer as an effort to force the employee to quit.' . . . Intolerability is `assessed by the objective standard of whether a `reasonable person' in the employee's position would have felt compelled to resign.'" E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992) (citations omitted).

Here, Peterson contends that his working conditions became intolerable after Lanier reclassified him. Although Peterson received a pay reduction and loss of responsibilities as a result of the reclassification, see Jurgens v. E.E.O.C., 903 F.2d 386, 392 (5th Cir. 1990), seven other DSMs nationwide accepted the reclassification to the MCSR position. Moreover, Peterson admitted that the MCSR position did not involve demeaning duties. Id. Peterson's subjective belief that he could not live on his reduced salary did not make his working conditions intolerable. See Clay Printing Co., 955 F.2d at 944. Nor did his embarrassment over his inability to access to the computer shortly before his resignation. We therefore find that the forecast of the evi-

4

dence discloses that Peterson's working conditions were not intolerable.

Peterson also failed to establish that Lanier deliberately intended to force him to resign. When Lanier undertook its nationwide reorganization, it eliminated four DSM positions in Peterson's region. In deciding which DSMs to reclassify, Lanier ranked the DSMs in Peterson's region based on objective criteria. Peterson ranked fifteenth out of sixteen DSMs. Cf. Lovelace v. Sherwin Williams Co., 681 F.2d 230, 244 (4th Cir. 1982) (recognizing stack ranking as legitimate, nondiscriminatory reason for demotion). Further, Lanier decided to reclassify Peterson in light of his "needs improvements" overall performance rating in three of the last four years. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991). Further, although Peterson claims that he--and not a white male who was his subordinate--should have been offered a transfer to another city instead of a position as a MCSR, he admitted in his deposition that he would have relocated only for another DSM job.

Accordingly, because we find that Peterson failed to establish that he was constructively discharged, we affirm the district court's grant of summary judgment in Lanier's favor. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5